IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CARLOS ABREU,

                          Plaintiff,              Civil Action No.
                                                  9:17-CV-1312 (DNH/DEP)
        v.

JAMES F. DONAHUE, Deputy Superintendent
For Mental Health Services, Marcy Correctional
Facility, *et al.*,

                          Defendants.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF:

CARLOS ABREU, *Pro Se*
99-A-3027
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

FOR DEFENDANTS:

HON. BARBARA D. UNDERWOOD        ERIK B. PINSONNAULT, ESQ.
New York State Attorney General  Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER, REPORT, AND RECOMMENDATION

*Pro se* plaintiff Carlos Abreu, a New York State prison inmate and frequent federal court litigator, has commenced this action against several employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and the New York State Office of Mental Health ("OMH"), pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights during the course of his incarceration. Although as originally pleaded plaintiff's claims were considerably broader, they have been narrowed as a result of the court's review pursuant to 28 U.S.C. §§ 1915(e), 1915A. Plaintiff's three remaining causes of action implicate six individuals, narrowed from the nearly forty defendants named in his complaint, and are limited to an Eighth Amendment claim related to plaintiff's conditions of confinement in a residential mental health unit ("RMHU"); a First Amendment claim related to a watch imposed with respect to his mail; and a First Amendment retaliation claim.

In response to plaintiff's complaint, defendants have moved for dismissal of his remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based upon his purported failure to exhaust available administrative remedies before commencing suit. Defendants also move for dismissal of plaintiff's Eighth Amendment conditions of

2

confinement claim on the merits, arguing that he has failed to state a
cognizable cruel and unusual punishment cause of action. Plaintiff has not
responded to defendants' motion. For the reasons that follow, I
recommend that plaintiff's remaining Eighth Amendment conditions of
confinement claim be dismissed, but that defendants' motion otherwise be
denied.

I.    BACKGROUND[1]

Plaintiff, a New York State prison inmate currently being held in the
custody of the DOCCS, was confined in an RMHU at the Marcy
Correctional Facility ("Marcy"), located in Marcy, New York, from October
31, 2017 through November 7, 2017. Dkt. No 1 at 3, 8, 10. He suffers from
a serious mental illness and has been designated by the OMH as a
service level 2. *Id.* at 38. As a result, when Abreu was transferred into
Marcy from the Five Points Correctional Facility, he was placed directly
into the facility's RMHU. *Id.* at 8, 10. Plaintiff's claims arise out of three

---

[1]    In light of the procedural posture of this case, the following recitation is drawn
principally from plaintiff's complaint, the contents of which have been accepted as true
for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of
the factual allegations contained in the complaint.") (citing *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

distinct set of circumstances experienced during that period of confinement.

### A.    First Amendment Mail Tampering

Plaintiff alleges that from the date he was transferred into Marcy, Superintendent Justin J. Thomas ("Thomas") imposed a "mail watch" on Abreu's incoming and outgoing legal mail and correspondence.[2] Dkt. No. 1 at 49. As a result of the mail watch, plaintiff's incoming mail was opened in the presence of officers, and his outgoing mail was sealed outside of plaintiff's presence. *Id.* at 49, 52. Plaintiff further alleges that once officers obtained his unsealed, outgoing mail, the result would be that his correspondence, including his grievances, was regularly misplaced. *Id.* at 49.

### B.    Conditions of Confinement Claim

On November 6, 2017, plaintiff, who was housed in RMHU cell B-1-22, passed to a nurse a note in which he stated his intent to commit suicide. Dkt No. 1 at 17-18. Plaintiff alleges that although he wanted to be placed in an observation cell, he was told by defendant Gregory D. Mayo, a corrections officer at Marcy, that no observation cells were then

---

[2]    It is not entirely clear from plaintiff's prolix whether the "mail watch" ceased on the date the complaint was signed, or if it continued past that date. *Compare* Dkt. No. 1 at 49 *with id.* at 76.

available at the facility. *Id.* at 18. Instead of being transported to another facility with an available observation cell, plaintiff was taken to a holding cell and left there for approximately one hour, while defendant Mayo and defendant Alfred J. Maunz, a Sergeant at Marcy, removed all of plaintiff's personal effects from cell B-1-22. *Id.* After cell B-1-22 was completely emptied, plaintiff was forced to remove his clothes, provided only a "smock" and "two mats," and returned to cell B-1-22 for one-on-one observation. Dkt. No. 1 at 18-19. At that time, the cell was "extremely cold," with cold air being forced through the ventilation system of the cell. *Id.* at 19-20. In addition, defendants Mayo and Maunz obstructed plaintiff's ability to close the window of the cell, further contributing to the extreme cold. *Id.* at 20.

On November 7, 2017, defendant James F. Donahue, the Deputy Superintendent for Mental Health Services at Marcy, and defendant "Mr. Russo," a social worker at the prison, noticed the cold condition of plaintiff's cell during their rounds. Dkt No. 1 at 21. According to plaintiff, those two defendants "alleged that they [would try] to send [someone] to close [the window]," but no one ever arrived to remedy the problem. *Id.* By "lunchtime" on November 7, 2017, plaintiff was removed from his cell B-1-22 and transferred to an observation cell. *Id.* Plaintiff complains that the

5

observation cell was also "extremely cold," but he was returned back to cell B-1-22 by mid-day on November 8, 2017.[3] *Id.* at 21-22.

C.     First Amendment Retaliation

Plaintiff's final claim stems from an alleged sexual assault by defendant Sean P. Wiggins, a corrections officer at Marcy, that occurred on November 8, 2017, while plaintiff was confined to the observation cell. Dkt. No. 1 at 21, 26. On November 9, 2017, plaintiff swallowed a large metal piece from his headphones, and was escorted by, *inter alia,* defendant Wiggins to be seen by a nurse. *Id.* During the nurse's examination, plaintiff complained about the sexual assault pursuant to the Prison Rape Elimination Act ("PREA"), 42 U.S.C.A. § 15601 *et seq.* Dkt. No. 1 at 26. In response to hearing the allegation, defendant Wiggins tightened plaintiff's handcuffs, which caused him to suffer wrist pain. *Id.* Wiggins then escorted plaintiff to a "dry room,"[4] where he conducted an overly-aggressive strip search. *Id.* While plaintiff was completely naked,

---

[3]     The portion of plaintiff's complaint in which he asserts an Eighth Amendment claim arising from the cold conditions in the observation cell were dismissed by District Judge David N. Hurd upon initial review of plaintiff's complaint. Dkt. No. 11 at 24-25.

[4]     A "dry room" is a constantly-supervised room that lacks plumbing facilities, such as a toilet. *See, e.g., Paulino v. Fischer,* 2012 WL 6114934, at *3 (N.D.N.Y. 2012) (McAvoy, J).

6

defendant Wiggins pulled plaintiff's hair with "force" and called him a "fucking bitch." *Id.*

II.   PROCEDURAL HISTORY

This action was initiated by the submission of a complaint signed on November 27, 2017, and filed with the court on December 1, 2017. Dkt. No. 1. Following commencement of the action, Abreu, who previously had accumulated "three strikes" for purposes of 28 U.S.C. § 1915(g), filed a motion for leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 8. On January 22, 2018, District Judge David N. Hurd issued a decision and order in which he granted plaintiff IFP status on the basis of the "imminent danger" exception of the Prison Litigation Reform Act ("PLRA") three strikes provision. *See generally* Dkt. No. 11.

In the same decision and order, Judge Hurd reviewed the legal sufficiency of plaintiff's complaint, in accordance with 28 U.S.C. §§ 1915(e), 1915A and directed a response to three claims, including (1) an Eighth Amendment claim, related to plaintiff's exposure to "extreme cold" in cell B-1-22, against defendants Mayo, Maunz, Donahue, and Russo; (2) a First Amended claim, related to the "mail watch," against defendant Thomas; and (3) a First Amendment retaliation claim against defendant

7

Wiggins, related to the use of force on November 9, 2017. *See generally* [Dkt. No. 11](#).

In lieu of serving an answer, on April 12, 2018, defendants responded to plaintiff's complaint by filing a motion seeking its dismissal for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Dkt. No. 32](#). Plaintiff having failed to oppose the motion, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). See Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Dismissal Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the

8

pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to

9

'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Exhaustion of Remedies

In their motion, defendants argue that plaintiff's claims are procedurally barred by virtue of his failure to exhaust available administrative remedies. Dkt. No. 32-1 at 5-11. While plaintiff's complaint does not address exhaustion, defendants maintain that it would have been

10

impossible for plaintiff to satisfy his exhaustion requirement before commencing suit, given the chronology of events. *Id.*

### 1.    Exhaustion Generally

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also*

*Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[5]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[6]

---

[5]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

[6]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[7]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has

---

[7]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at

14

1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[8] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart

---

[8]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies, the complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).[9]

　　2.　Analysis

As defendants observe, plaintiff's complaint "is silent as to plaintiff's efforts to exhaust his administrative remedies." Dkt. No. 32-1 at 4. However, because exhaustion constitutes an affirmative defense, plaintiff was not obligated to plead facts demonstrating that he has satisfied his

---

[9]　Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

16

exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also McNair v. Rivera*, No. 12-CV-6212, 2013 WL 4779033, at *4-6 (S.D.N.Y. Sept. 6, 2013) (citing *Jones, inter alia*).

In their motion, defendants necessarily rely on the dates upon which the incidents are alleged to have occurred, and the time elapsing from those points to commencement of this action, arguing that it is clear from the face of the complaint that plaintiff's claims are unexhausted. Dkt. No. 32-1 at 3. Defendants observe that the relevant events are alleged to have taken place between October 31, 2017 and November 27, 2017, and that plaintiff signed his complaint, which was filed with the court on December 1, 2017, on November 27, 2017. *Id.* at 4. Defendants contend that in the absence of special circumstances that may shorten the timeframe, the three-step grievance procedure "may be" timely completed in a total of 103 days.[10] *Id.* at 7.

Plaintiff's claims include his allegation that he was the subject of an unconstitutional mail watch, which occurred from October 31, 2017 through, and possibly continuing past, November 27, 2017. Dkt No. 1 at

---

[10]    As defendants observe, the maximum period for which the grievance process may be timely completed can be shortened in special circumstances, such as is the case with respect to grievances involving harassment. Dkt. No. 32-1 at 7 (citing 7 NYCRR § 701.8).

49. Assuming that plaintiff filed his grievance on the first day of the mail watch, he would have needed to fully exhaust his administrative remedies under the PLRA within twenty-seven days. With respect to plaintiff's conditions-of-confinement claim, which arose on November 6, 2017, plaintiff would have needed to fully exhaust his administrative remedies under the PLRA within twenty-one days. Dkt No. 1 at 17-18. Finally, plaintiff's retaliation claim pursuant to the First Amendment arose on November 9, 2017, he would have needed to fully exhaust his administrative remedies under the PLRA within a mere eighteen days. Dkt No. 1 at 21, 26.

Experience with inmate litigation suggests that it is not likely that plaintiff completed the grievance procedure in as few as eighteen days and as much as twenty-seven days. Defendants' argument that it was "implausible, if not impossible" for plaintiff to fully exhausted his administrative remedies thus presents an attractive argument for dismissal of his complaint. Indeed, there is some authority to suggest that a time period of less than twenty-five days between an incident and the commencement of a federal lawsuit renders plaintiff's ability to fully exhaust the grievance procedure "impossible" and provides a basis to grant a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Price v. City*

*of New York*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012); *see Cary v. City of New York*, 2018 WL 1581988, *3 (S.D.N.Y. Mar. 27, 2018) (granting a motion to dismiss where it would have been impossible for the plaintiff to exhaust his administrative remedies between the July 13, 2017 incident and the August 7, 2017 complaint); *cf. Cohen v. Welch*, 9:16-CV-00593, 2017 WL 3311244, *5 (N.D.N.Y. Jul. 11, 2017) (concluding that the single day that elapsed between the incident and the filing of the complaint rendered it "implausible that [the p]laintiff was able to exhaust his administrative remedies before commencing this action").

At this procedural juncture, however, I am unable to recommend that his complaint be dismissed for failure to exhaust available administrative remedies. Even assuming that the number of days that elapsed firmly established that plaintiff did not file a grievance concerning the relevant events and pursue that grievance to completion before the CORC, the court would nonetheless then have to determine whether the IGP was available to him as discussed by the Supreme Court in its decision in *Ross*. In his complaint, plaintiff intimates that the grievance procedure may have been "unavailable" to him, in which case the exhaustion requirement would not preclude his bringing of this action. *Ross*, 136 S. Ct. at 1859-60. During the course of the "mail watch," which is alleged to have begun on

October 31, 2017, plaintiff suggests that both his incoming and outgoing correspondence, including prison grievances, were "regularly missing."[11] Dkt. No. 1 at 49. I am unable to discern from the face of the complaint, and without plaintiff's opposition to defendants' motion, the nature of the purportedly missing grievances from the complaint. *See generally* Dkt. No 1. Since it is not clear from the face of plaintiff's complaint whether circumstances rendered the IGP unavailable to the plaintiff, I am disinclined to recommend dismissal of plaintiff's complaint on this procedural basis.

    C.    <u>Merits of Plaintiff's Conditions of Confinement Claim</u>

In their motion, defendants also challenge the merits of plaintiff's Eighth Amendment conditions of confinement claim. In support of this portion of their motion, defendants argue that while plaintiff's conditions of confinement as described in his complaint may have been uncomfortable, as a matter of law they were not tantamount to cruel and unusual punishment and therefore do not run afoul of a the Eighth Amendment.

---

[11]    At least at the summary judgment stage, a mere allegation of mail tampering, without evidentiary support, is insufficient to create genuine issue of material fact. *See, e.g.*, *Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), *aff'd*, 178 F. App'x 39 (2d Cir. 2006).

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]' " *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and a subjective requirement. *Walker*, 717 F.3d at 125; *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.' " *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see also Walker*, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). In a prison setting, basic needs

include "food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (*citing*, *inter alia, Rhodes*, 452 U.S. at 347). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125; *Waldo*, 1998 WL 713809, at *2.

Plaintiff's remaining Eighth Amendment allegations center upon his claim that he was subjected to extremely cold temperatures while confined in the Marcy RMHU for approximately one day.[12]  Without question, exposure to extreme temperatures in a prison setting can constitute cruel

---

[12]  The balance of plaintiff's Eighth Amendment claim, as set forth in his complaint, was dismissed upon initial review pursuant to 28 U.S.C. §§ 1915(e), 1915A. *See* Dkt. No. 11 at 24-29.

and unusual punishment as proscribed under the Eighth Amendment. *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003) (affirming district court's conclusion that "exposure to extremes of temperature violated the detainees' constitutional rights"), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir 2009); *Gatson v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (finding that the plaintiff's allegation that he was exposed to freezing temperatures from November 1990 through March 1991 stated a claim under the Eighth Amendment); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing the district court's grant of summary judgment where there was evidence that the plaintiff had been deliberately exposed to bitter cold in his cell block for three months).

In the portion of the Eighth Amendment claim which survived initial review, plaintiff alleges that he was confined to Cell B-1-22 from the evening of November 6, 2017 until "lunch time" on November 7, 2017. Dkt. No. 1 at 19-21. According to plaintiff, the cell was extremely cold, and he was provided with only two mats and a smock. *Id.* Plaintiff further alleges that defendants Mayo and Maunz placed an object into his window that prevented it from closing. *Id.* On November 7, 2017, defendants Donohue and S.W. Russo noticed the condition of the cell during rounds, but failed

23

to send anyone to the cell to correct the problem before plaintiff was transferred to an observation cell later that day. *Id.*

Undeniably, the Eighth Amendment is violated when a prisoner is subjected to bitter cold for prolonged periods. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (involving claim by a plaintiff that he was subjected to temperatures at or below freezing for a five month period). In this instance, plaintiff's claim that he was subjected to cold air with the benefit of only two mats and a smock for a period of less than twenty-four hours does not rise to a level of constitutional significance. *See Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *4-5 (W.D.N.Y. Apr. 26, 2007) (rejecting Eighth Amendment claim where defendant was allegedly kept in a cold cell for three days without a blanket); *Walker v. Schriro*, No. 11-CV-9299, 2013 WL 1234930, at *12-13 (S.D.N.Y. Mar. 26, 2013) (allegations that the plaintiff was forced to sleep at an intake area with constant air conditioning system blowing extreme cold air onto the plaintiff, who lacked blankets and sheets, for a period of more than two days was insufficient to support an Eighth Amendment violation).

Accordingly, I recommend that the remaining portion of plaintiff's Eighth Amendment conditions of his confinement claim be dismissed.

24

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Although plaintiff was under no obligation to plead facts in his complaint to demonstrate that he has complied with the PLRA's exhaustion requirement, the number of days that elapsed between the incidents and commencement of the action make it exceptionally unlikely that plaintiff complied with the exhaustion requirements. Nonetheless, it is possible that he could have completed the grievance process before commencing suit, and in any event plaintiff has alleged on the face of his complaint facts suggesting that the inmate grievance process may have been unavailable to him. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 32) be GRANTED, in part, and that the remaining portion of plaintiff's Eighth Amendment conditions of confinement claim, involving allegations of extreme cold conditions in RMHU Cell B-1-22, be DISMISSED, but that defendants' motion to dismiss otherwise be DENIED, without prejudice to defendants' right to raise the issue of exhaustion on a motion for summary judgment or in a request for an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.[13] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      October 4, 2018
            Syracuse, New York

---

[13]      If you are proceeding pro se and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

## I. Introduction

*1 *Pro se* plaintiff Kody Weidman ("Weidman" or
"Plaintiff"), an inmate in the custody of the New
York State Department of Corrections and Community
Supervision ("DOCCS"), instituted this action pursuant
to 42 U.S.C. § 1983, alleging that he was denied adequate
medical treatment in violation of his rights under the
Eighth Amendment. Defendant has moved to dismiss the
complaint on the basis that Weidman has failed to exhaust
his administrative remedies.

## II. Background

Plaintiff has alleged the following facts, which the Court
accepts as true for purposes of this motion to dismiss
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure ("Rule 12(b) (6)"). *E. g., Jaghory v. New York
State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997)
(citations omitted). On September 3, 2012, Plaintiff was
bitten on his left cheek by a spider. He reported it and
was sent to sick call. However, the head nurse refused to
treat him, and as a result, his left cheek "swell[ed] up and
start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4.
Plaintiff contacted "D.I. Delmani", who in turn contacted
"the sgt", who took him to the hospital at Lakeview on
September 6, 2012. *Id.* There, Plaintiff was seen by a
doctor who gave him "sulfamethox" and applied a heat

pack to his face. The "pus and swelling then went down."
*Id.*

Plaintiff did not file a grievance but instead proceeded
directly to this Court, filing his complaint on September
14, 2012. Defendants filed a motion to dismiss on March
18, 2013. The complaint was dismissed for failure to
prosecute on June 19, 2013, but was reinstated on June
25, 2013. The matter was transferred to the undersigned
on February 20, 2014. For the reasons set forth below,
the motion to dismiss is granted, and the complaint is
dismissed in its entirety with prejudice.

## III. Defendant's Motion to Dismiss

Defendant asserts that it is clear from the face of Plaintiff's
complaint that he has failed to exhaust his administrative
remedies by filing a prison grievance, and therefore his
complaint warrants dismissal pursuant to Rule 12(b)(6).
In response to Defendant's non-exhaustion argument,
Plaintiff simply restates the basis for his grievance as his
reason for not exhausting his administrative remedies.

### A. Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (the "PLRA"),
Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an
inmate to exhaust all available administrative remedies
before filing suit in federal court. Specifically, Section
1997e(a) of Title 42 U.S.C. provides that "[n]o action
shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available
are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court
has ruled that the exhaustion requirement "applies to
all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether
they allege excessive force or some other wrong[,]" *Porter
v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d
12 (2002).

*2 It is well established that exhaustion requires that
"a prisoner must grieve his complaint about prison
conditions up through the highest level of administrative
review" before filing suit. *Porter v. Goord,* No. 01 Civ.
8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June
28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d
Cir.2001) ("[G]rievances must now be fully pursued prior
to filing a complaint in federal court."); other citation

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

### B. Analysis

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam*) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, *5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000)) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5 IT IS SO ORDERED.**

## All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4779033
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Larry McNAIR, Plaintiff,
v.
Warden Louis RIVERA, and Deputy
Warden of Security Canty, Defendants.
Michael Owens, Plaintiff,
v.
Warden Louis Rivera, and Deputy
Warden of Security Canty, Defendants.
Jeffrey Annunziata, Plaintiff,
v.
Warden Louis RIVERA, and Deputy
Warden of Security Canty, Defendants.

Nos. 12 Civ. 06212(ALC)(SN), 12 Civ.
8325(ALC)(SN), 13 Civ. 0352(ALC)(SN).
|
Sept. 6, 2013.

*ORDER ADOPTING REPORT
AND RECOMMENDATION*

ANDREW L. CARTER, JR., District Judge.

**\*1** *Pro se* Plaintiffs Larry McNair, Michael Owens, and Jeffrey Annunziata filed Complaints against Warden Louis Rivera and Deputy Warden of Security Yolanda Canty (collectively "Defendants") asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights due to the "no pass" policy instituted at the Anna M. Kross Center ("AMKC") on Rikers Island. Specifically, the "no pass" policy, which allows only escorted movement through the AMKC, allegedly restricted Plaintiffs' ability to practice their religion, access the law library and medical clinic, and meet with loved ones during visitation hours.

Defendants filed a Motion to Dismiss the respective Complaints on February 22, 2013, arguing Plaintiffs' claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, for failure to exhaust administrative remedies. Plaintiff McNair filed an opposition to Defendants' Motion on March 12, 2013. Plaintiffs

Owens and Annunziata did not submit any opposition papers. This Court referred Defendants' Motion to Judge Magistrate Netburn for a Report and Recommendation ("R & R") on April 4, 2013.

After careful consideration, Magistrate Judge Netburn issued a R & R on April 26, 2013, proposing the Motion to Dismiss be denied. Despite notification of the right to object to the R & R, no timely objections were filed. When no objection is made, the Court subjects the R & R to a clear error review. *Arthur v. Goord,* No. 06 Civ. 326(DLC), 2008 WL 482866, at *3 (S.D.N.Y. Feb. 21, 2008) ("To accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.' " (quoting *Figueroa v. Riverbay Corp.,* No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006))). The Court's review finds no clear error, and accordingly, the Court **ADOPTS** Magistrate Judge Netburn's R & R in its entirety. Defendants' Motion to Dismiss is **DENIED.**

**SO ORDERED.**

**Larry MCNAIR,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

**Michael OWENS,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

**Jeffrey ANNUNZIATA,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

### *REPORT & RECOMMENDATION*

SARAH NETBURN, United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER, JR.:**

In these three actions, consolidated for this motion to dismiss, pro se plaintiffs Larry McNair, Michael Owens and Jeffrey Annunziata (collectively, the "plaintiffs"), bring civil rights actions pursuant to 42 U.S.C. § 1983. Plaintiffs allege that, while in the custody of the New York City Department of Correction (the "DOC") at the Anna M. Kross Center (the "A.M.K.C.") on Rikers Island, the DOC instituted a "no pass" policy that violates their federally protected rights. Plaintiffs claim that this "no pass" policy, which allows only escorted movement through the A.M.K.C., has restricted their ability to practice their religion, access the law library and medical clinic, and meet with loved ones during visitation hours.

**\*2** Warden Luis Rivera and Deputy Warden of Security Yolanda Canty (collectively, the "defendants") have moved to dismiss plaintiffs' complaints, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to exhaust available administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e. Because plaintiffs are not required to plead exhaustion of their administrative remedies, I recommend that defendants' motion to dismiss be DENIED.

### BACKGROUND

The following facts are assumed to be true for the purposes of this motion.

### I. Factual Background

In June or July 2012, defendants adopted a "no pass" policy at the A.M.K.C. that prohibits inmates from moving about the facility without an escort. (*See* 12 Civ. 06212, Docket Number ("Doc.No.") 5, Am. Compl. ("McNair Compl.") at II.C–D; 12 Civ. 08325, Doc. No. 2, Compl. ("Owens Compl.") at II.C–D; 13 Civ. 00352, Doc. No. 2, Compl. ("Annunziata Compl.") at II.C–D. [1] ) Because insufficient escorting officers are available from 7:00 a.m. to 3:00 p.m., plaintiffs are denied access to, or delayed in accessing, the law library, religious services, the medical clinic and visitors. This interferes with their ability to advance their lawsuits, practice their religion, obtain medical treatment and communicate with their families. (Pls. Compls. at II.D.) Plaintiffs allege that the "no pass" policy has continued through to the present day. (*Id.* at II.C.)

Because of the "no pass" policy, McNair has suffered:

> ... s leepless nights with chest pains, breathing problems, weight gain, hearing voices, fear for [his] life. [He] could not be treated because, [he had] no one to take [him] to the clinic to receive treatment. After 12 months [he had] finally been prescribed seizure medication by the medical staff. [He could not] defend [himself] for a crime [he] did not commit, because [he could not] get to the law library five days a week, as per NYCDOCS directive.

(McNair Compl. at III.)

Because of the "no pass" policy, Owens has suffered "unnecessary back pain, depression from not being [able] to practice [his] religion (Muslim), and pain and suffering by not being able to be with [his] loved ones during visiting hours." (Owens Compl. at III.)

Because of the "no pass" policy, Annunziata has suffered:

> ... excessive and unnecessary pain, and had [his] life [threatened] jeopardized by not [being] allowed to receive follow-up care from the medical department .... [he has] suffered spiritually by not being able to attend Muslim services and pray to [his] higher power every Friday. [His] medical condition is deteriorating, and [his] life is constantly at risk on a daily basis.

(Annunziata Compl. at III.)

Plaintiffs seek to enjoin the "no pass" policy, and an award of compensatory and punitive damages. (Pls. Compls. at V.)

### II. Steps Taken to Exhaust Available Administrative Remedies

**\*3** In their complaints, plaintiffs state that they filed their grievances at the A.M.K.C. (*Id.* at II.A.) Annunziata

grieved "all of [his complaints]." (Annunziata Compl. at IV.E.1) McNair and Owens grieved the "no pass policy and denial of religious, medical visits," and Owens also grieved "law library services." (McNair Compl. at IV.E.1; Owens Compl. at IV.E.1.) Plaintiffs state that there were no responses to their grievances. (Pls. Compls. at IV.E.2.)

Prompted by the Court's complaint form to describe "all efforts to appeal to the highest level of the grievance process," plaintiffs answered in the following ways: (1) McNair "wrote same grievance to the Warden [Luis] Rivera. Also spoke to someone on the Board of Correction to no avail," (McNair Compl. at IV.E.3); (2) Owens "filed same grievance with Warden [Luis] Rivera and Board of Correction to no avail," (Owens Compl. at IV.E.3); and Annunziata "sent letter to Warden [Luis] Rivera, and [Deputy] Supt Security Canty who also never responded or addressed the complaint," (Annunziata Compl. at IV.E.3). Plaintiffs, however, did not attach any copies of their grievances to their complaints.

### III. Procedural Background

On August 13, 2012, McNair filed his complaint, which was amended on October 11, 2012. On November 8, 2012, the Honorable Andrew L. Carter, Jr. referred McNair's case to a magistrate judge for general pretrial supervision, and on November 9, 2012, the referral was reassigned to my docket. On October 19, 2012, Owens filed his complaint, and on December 26, 2012, Owens's case was referred to my docket for general pretrial supervision. On January 14, 2013, Annunziata filed his complaint, and on January 30, 2013, Annunziata's case was referred to my docket for general pretrial supervision. On January 18, 2013, the Court ordered defendants' proposed motions against McNair and Owens to be consolidated. At defendants' request, on February 11, 2013, Annunziata's case was included in the briefing schedule.

On February 22, 2013, defendants filed a motion to dismiss plaintiffs' complaints.[2] On March 12, 2013, McNair filed his opposition to the motion. On April 4, 2013, Judge Carter referred this motion to me for a report and recommendation. On April 8, 2013, defendants filed their reply brief in support of their motion. Because Owens and Annunziata did not file timely oppositions, on April 9, 2013, I extended their time to oppose until April 23, 2013. Because Owens and Annunziata never opposed the

motion, defendants' motion to dismiss was deemed fully submitted on April 23, 2013.

### DISCUSSION

Defendants move to dismiss plaintiffs' complaints for failure to exhaust administrative remedies.

### I. Statement of Law

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

**\*4** The Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *See Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

When presented with an unopposed motion, the Court may not find for the moving party without reviewing the record and determining whether there is sufficient support for granting the motion. *See Kinlaw v. Walsh,* 10 Civ. 07539(RMB)(JLC), 2012 WL 2548437, at \*1 (S.D.N.Y. June 29, 2012); *see also Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir.2004) ( "[C]ourts,

in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law" (citation and internal quotation marks omitted)).

When faced with a *pro se* litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest [s]." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted); *see Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis,* 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. Exhaustion of Administrative Remedies

Defendants argue that plaintiffs did not comply with the A.M.K.C.'s grievance procedures and, therefore, their actions are barred under the PLRA. This is defendants' only argument for dismissal.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth v. Churner,* 532 U.S. 731, 739 (2001). It covers "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007); *accord* 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure: Jurisdiction § 3573.4 (3d ed.2008). Dismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evidenced on the face of the complaint. *Jones,*

549 U.S. at 214; *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."); *see also Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998) ("An affirmative defense may be raised by a [Rule 12(b)(6) motion to dismiss], without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

**\*5** Defendants assert that plaintiffs' complaints establish that plaintiffs did not comply with the A.M.K.C.'s grievance procedures and, therefore, their claims are barred under the PLRA.[3] Their argument seems to be that the Court's "prisoner complaint forms" provide space for plaintiffs to describe "all efforts to appeal to the highest level of the grievance process" but plaintiffs described efforts that alone would not suffice to perfect a grievance under DOC policy. (*See* Pls. Compls. at IV.E; Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs.Br.") at 8.) Plaintiffs' omissions, defendants argue, establish their failure to exhaust. (*See* Defs. Br. at 5–8; Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss ("Defs. Reply Br.") at 3.)

*Jones* precludes defendants' argument. If exhaustion is not an affirmative pleading requirement, then plaintiffs cannot be penalized for what they do not say in their pleadings about their efforts to exhaust. Thus, and especially in light of the liberal *pro se* pleading requirements, plaintiffs' statements of the efforts they took cannot be construed to mean that they did not pursue the proper avenues for exhaustion. *See Jones,* 549 U.S. at 214 ("Although exhaustion was a 'centerpiece' of the PLRA ..., failure to exhaust was notably not added [to the four enumerated grounds for preliminary judicial screening]. There is thus no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust.").

Plaintiffs have not pled that they did not exhaust; and at this stage in the litigation they do not need to demonstrate that they did. *See id.* at 216 (holding that prisoners need not demonstrate exhaustion in their complaints); *Pratt v. City of New York,* —— F.Supp.2d ——, 11 Civ. 08355(JGK), 2013 WL 979431, at \*3 (S.D.N.Y. Mar. 14, 2013) (finding when amended complaint did not establish

plaintiff failed to comply with grievance procedures, "scope of proper [A.M.K.C.] grievance procedure, [and] whether the plaintiff followed that procedure properly ... should [not] be determined on ... a motion to dismiss"); *Smalls v. Jummonte,* 08 Civ. 04367(DAB), 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) ("While the evidence submitted by Defendants suggests that Plaintiff did not follow the DOC's established grievance procedure, nonexhaustion is not apparent from the face of the Complaint, and Plaintiff must be afforded the opportunity to respond to Defendants' evidence with his own, if any."); *see also Johnson v. Westchester Cnty. Dep't of Corr. Medical Dep't,* 10 Civ. 06309(JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (finding that plaintiff's allegations that he filed a complaint, "followed all Rules and [Procedures]," and that "[t]he inmate Grievance within this facility fails to maintain an adequate grievance system" lacked specifics, but was not valid basis for dismissal); *Bailey v. Fortier,* 09 Civ. 00742(GLS)(DEP), 2010 WL 4005258, at *6 (N.D.N.Y. Aug. 30, 2010) ("It should be noted that courts are generally [hesitant] to dispose of the exhaustion defense on a motion to dismiss, and ordinarily will dismiss a complaint at that stage only if it is patently clear from the face of plaintiff's complaint that exhaustion has not occurred and there is no basis to excuse PLRA exhaustion requirement." (citation omitted)), adopted by 2010 WL 3999629 (N.D.N.Y. Oct. 12, 2010).

**\*6** In his opposition papers, McNair does state that the A.M.K.C. "is not equipped with a five (5) level grievance procedure, and the grievance directive policy prevents inmates from appealing grievances where religion is a factor," (McNair's Affirmation in Support of Motion in Opposition to Defendants' Motion to Dismiss ("McNair Opp. Br.") at ¶ 11), and that "grievance officer Jefferson is not conducting his duties consistent with the grievance directive procedure," (*id.* at ¶ 12). The Court may consider these pleadings, first raised in McNair's opposition brief, on this motion to dismiss. *See, e.g., Philippeaux v. United States,* 10 Civ. 06143(NRB), 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011). But these additional statements do not clearly resolve which steps McNair actually took. [4] *See Pratt,* 2013 WL 979431, at *3 (finding a lack of clarity is not "a valid basis for dismissal under *Jones,* which does not require that the plaintiff demonstrate exhaustion in the complaint" (citation omitted)). Therefore, they also do not establish grounds to dismiss McNair's complaint. *See id.* at *3 & n. 2 (finding plaintiff had not pled

failure to exhaust his administrative remedies when he pled only that he filed an initial grievance and then was told by supervisor that no "inmates grievance committee" existed).

### III. Conversion of Motion to Dismiss into Motion for Summary Judgment

The Court also declines to convert *sua sponte* defendants' motion to dismiss into a motion for summary judgment. Four concerns animate this decision.

First, if the Court were to convert the motion, I would have to "afford all parties the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). This is especially true when plaintiffs are *pro se* and were provided no notice that the motion might be converted. *Hernández v. Coffey,* 582 F.3d 303, 307–08 (2d Cir.2009) ("*[P]ro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment."); *cf ., e.g., Mateo v. Alexander,* 08 Civ. 08797(RJH)(DCF), 2010 WL 431718, at *2 (S.D.N.Y. Feb. 9, 2010) (converting motion when defendants notified *pro se* plaintiff "that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, [plaintiff] would need to submit evidence". Here, there is no indication that defendants, pursuant to Local Rule 12.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York, provided plaintiffs with notice that the motion might be converted. But even if they did, additional factors militate against conversion.

Second, although I could order limited discovery exclusively on the issue of exhaustion, I do not believe such a measure would serve any desirable judicial end. *Cf. Stevens v. City of New York,* 12 Civ. 01918(JPO) (JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (discussing that a court must "[b]alanc [e] the need to secure the PLRA's mandates of efficiency and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits." (citing *McCoy,* 255 F.Supp.2d at 249)). On the contrary, bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits. The Court does not anticipate that full fact discovery will be sufficiently laborious, moreover, to counter plaintiffs' interest in a just disposition of their suits.

**\*7** Third, even if the Court were inclined to convert the motion to dismiss into one for summary judgment, defendants have not provided or even alluded to any documents that would be dispositive. *See Johnson,* 2011 WL 2946168, at \*2 n. 1 (declining to convert motion to dismiss into motion for summary judgment because, *inter alia,* "defendants proffered no evidence going to how plaintiff actually used or failed to use those procedures;" finding that "defendants submitted exhibits purporting to detail the relevant grievance procedures and to demonstrate the plaintiff's awareness of those procedures .... [but], the exhibits would establish not that plaintiff failed to exhaust the applicable grievance procedures, but only what those procedures are"). Thus, the Court has not been presented with a reason to convert the motion.

Fourth, plaintiffs have suggested potential "special circumstances" that, if true, might excuse a lack of exhaustion. *See Pratt,* 2013 WL 979431, at \*3 n. 2 (suggesting that the statement to plaintiff that there was no "inmate grievance committee" might constitute special circumstances excusing non-exhaustion) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (explaining that "special circumstances ... [may] justify [a] prisoner's failure to comply with administrative procedural requirements") (citation and internal quotation marks omitted)). These pleadings, although not dispositive here, support allowing discovery of potentially relevant evidence.

For these reasons, I decline to convert this motion *sua sponte* into a motion for summary judgment. *See, e.g., id.* at \*3 (declining to convert motion to dismiss to motion for summary judgment because "the parties [were] ... entitled to an opportunity to take discovery and submit additional relevant evidence, [but] the parties [had] not yet been allowed such an opportunity" (citing *Hernández,* 582 F.3d at 309)).

### IV. Lack of Opposition

Finally, defendants suggest that because "no opposition was filed by ... Owens or ... Annunziata .... the motion as against [them] must be considered unopposed and as such those complaints should be dismissed." (Defs. Reply Br. at 1.) To the extent defendants are arguing that plaintiffs' complaints should be dismissed because Owens

and Annunziata did not file oppositions, that is not a valid ground for dismissal. *See Kinlaw,* 2012 WL 2548437, at \*1; *see also Vt. Teddy Bear Co.,* 373 F.3d at 246 (finding that court must review motion for summary judgment even if unopposed). Although a plaintiff's failure to participate may provide grounds for future dismissal, it is not grounds for granting this motion premised on a failure to exhaust.

### CONCLUSION

Because plaintiffs are not required to plead the exhaustion of their administrative remedies, I recommend that defendants' motion to dismiss be DENIED.

\* \* \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**\*8** The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a), (d) (adding three additional days when service is made under Fed.R.Civ.P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed.R.Civ.P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr. at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Carter. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

### SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 4779033

Footnotes

| 1 | When applicable, the three complaints will be cited collectively as "Pls. Compls." |
|---|---|
| 2 | According to defendants' certificates of service, all plaintiffs were served with the motion to dismiss on February 22, 2013. But, as relating to Owens and Annunziata, the motion was not docketed until March 15, 2013. |
| 3 | A prison's requirements "define the boundaries of proper exhaustion." *Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir.2009). The Court takes judicial notice that, because plaintiffs are confined in a DOC facility, their administrative remedies are covered by the DOC's five-step Inmate Grievance Resolution Program ("IGRP"). |
| 4 | Indeed, McNair's pleadings could suggest that he is challenging the grievance procedure—an issue that need not be reached. (*See* McNair Opp. Br. at ¶ 18 ("The defendants however, have not explained whether (1) the IGRP procedures were available at A.M.K.C. [and] (2) plaintiff could use NYDOC procedures to complain of a wrong about serious medical problems [.] In [the] absence of such a showing by the defendants, dismissal on this ground must be denied at this time.").) |

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3798227
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joshua S. PRICE, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

No. 11 Civ. 6170(TPG).
|
Aug. 30, 2012.

### OPINION

THOMAS P. GRIESA, District Judge.

**\*1** Plaintiff, Joshua S. Price, is an inmate formerly housed at the Northern Infirmary Command, a New York City Department of Correction ("DOC") facility on Rikers Island. Plaintiff brings this action under 42 U.S.C. § 1983, alleging that he was served food that made him sick for several days.

Defendant, the City of New York, moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

The motion is granted.

### The Complaint

Plaintiff alleges that during the afternoon meal at the Northern Infirmary Command on July 2, 2011, he received food that smelled bad. Plaintiff further alleges that he complained to an officer, but that the officer said nothing was wrong with the food. He states that he had no choice but to eat the food. Plaintiff apparently ate the food.

On July 3, 2011, plaintiff allegedly became ill with severe stomach pain, diarrhea, vomiting, headache, and lightheadedness. He alleges that he was sick until July 8, 2011, that he was largely unable to move during his illness due to pain and diarrhea, and that he missed a court appearance as a result.

Plaintiff states that he filed a grievance with the correctional facility regarding his claim. According to plaintiff, the result of his grievance was "nothing they have not responded." Plaintiff further states that he sent his grievance to Albany.

Plaintiff filed his complaint on July 23, 2011. He seeks financial compensation for his pain and suffering in the amount of $50,000. On October 19, 2011, the court granted plaintiff's request to proceed *in forma pauperis.* Plaintiff originally named as defendant "New York City Department of Correctional Services Food Administration." In an order of service dated October 25, 2011, the court stated that it was unclear whether such an entity exists but found that it was clear that plaintiff intended to sue the City of New York. As such, the court dismissed the New York City Department of Correctional Services Food Administration and added the City of New York as a defendant. On January 12, 2012, defendant moved to dismiss the complaint under Rule 12(b)(6). On January 24, 2012, defendant filed a certificate of service certifying that the motion papers had been served on plaintiff. To date, plaintiff has not responded to the motion.

### Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Fed. R. of Civ. Proc., a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). Where a plaintiff is proceeding *pro se,* the complaint is held to a less stringent standard, and the court must construe the plaintiff's pleadings liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006). In deciding a motion under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

**\*2** A motion under Rule 12(b)(6) should be granted where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman*

*v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (internal quotations omitted). It should also be granted where an affirmative defense or other reason barring relief is apparent from the face of the complaint. *Conopco, Inc. v. Roll Int'l et al.,* 231 F.3d 82, 86–87 (2d Cir.2000).

Defendant argues that the complaint should be dismissed because: (i) plaintiff has not exhausted his administrative remedies; (ii) plaintiff concealed deposits into his inmate account on his application to proceed *in forma pauperis,* warranting dismissal under 28 U.S.C. § 1915(a)(1); (iii) plaintiff has failed to sufficiently allege a constitutional violation; (iv) plaintiff's claims for compensatory damages are barred by Section 1997e(e) of the Prison Litigation Reform Act as he alleges only a *de minimus* physical injury; and (v) plaintiff has not adequately pled a basis for municipal liability.

*Failure to Exhaust Administrative Remedies*
Where Congress so requires, a plaintiff must exhaust administrative remedies prior to pursuing an action under 42 U.S.C. § 1983. *See Giano v. Goord,* 250 F.3d 146, 150 (2d Cir.2001); *Lawrence v. Goord,* 238 F.3d 782, 785 (2d Cir.2001); *Nussle v. Willette,* 224 F.3d 95, 97–98 (2d Cir.2000).

Under the Prison Litigation Reform Act ("PLRA"), Congress has stated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or another Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision imposes a mandatory exhaustion requirement on incarcerated plaintiffs prior to filing an action in federal court. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.,* at 532.

The Supreme Court has recognized that the PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits, and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 524–25. The "administrative process can serve a constructive purpose in resolving inmate claims, remedying errors by prison officials, and streamlining and

clarifying those issues that remain for a court to decide." *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001). The Second Circuit has stated that "courts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmate plaintiffs to file or proceed with lawsuits before exhausting administrative remedies." *Id.*

**\*3** The DOC has an established grievance procedure, which

> requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC") for informal resolution within five working days; (2) request a formal hearing before the [IGRC], with a recommendation to be made within three working days; (3) appeal to the facility warden, who must render a decision within five working days; (4) appeal to the NYCDOC Central Office Review Committee ("CORC"), who must issue a recommendation within twenty working days; and (5) appeal to the Board of Correction, who must issue a recommendation to the Commissioner within twenty working days. The Commissioner must issue a final decision within ten working days of receipt of that recommendation.

*Piper v. City of New York,* 2004 U.S. Dist. LEXIS 29214, at *6 (S.D.N.Y. Mar. 16, 2004) (citing NYCDOC Reg. §§ III(B)(1)-(5)). A prisoner's remedies are not exhausted until he proceeds through all the steps of the grievance procedure. *Martinez v. Williams,* 349 F.Supp.2d 677, 682 (S.D.N.Y.2004). Furthermore, remedies must be exhausted *before* the suit is filed. *Neal,* 267 F.3d at 122. "Subsequent exhaustion after suit is filed therefore is insufficient." *Id.*

In this case, the events giving rise to plaintiff's claim allegedly occurred beginning July 2, 2011, with the results lasting through July 8, 2011. Plaintiff subsequently filed his complaint in this case on July 23, 2011. Although his complaint states that he filed a grievance, there is no indication that he pursued his grievance through all steps of the procedure. Furthermore, given the timelines for the

grievance procedure outlined in the DOC's regulations, it would have been impossible for him to do so in the 21 days between the alleged incident and the filing of his complaint. It is clear from the face of the complaint that plaintiff has failed to exhaust the administrative remedies available to him. As such, plaintiff's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

*Additional Grounds for Dismissal*

As noted above, defendant also moves to dismiss plaintiff's complaint on the grounds that plaintiff concealed information on his *in forma pauperis* application; failed to sufficiently allege a constitutional violation; alleges only a *de minimus* physical injury, which is insufficient under the PLRA; and did not adequately plead a basis for municipal liability.

However, plaintiff's failure to exhaust his administrative remedies is a fully adequate grounds for dismissal. As such, the court need not reach these additional arguments, and to do so would frustrate Congress's purpose in requiring exhaustion of remedies under the PLRA.

*Conclusion*

Defendant's motion is granted. The case is dismissed. This opinion resolves the motion listed as item number 15 on the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3798227

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1581988
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph CARY, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

17 Civ. 6443
|
Signed 03/27/2018

**Attorneys and Law Firms**

JOSEPH L. CARY, 17R2602, Ulster Correctional
Facility, P.O. Box. 800, Napanoch, NY 12458, pro se.

ZACHARY W. CARTER, Corporation Counsel of the
City of New York, 100 Church Street, New York, NY
10007, By: Christopher Ferreira, Esq., Attorneys for
Defendants.

OPINION

ROBERT W. SWEET, U.S.D.J.

**\*1** Defendant the City of New York (the "City" or the
"Defendant"), on its behalf and on behalf of Jane Doe
and John Doe, has moved pursuant to Federal Rule of
Civil Procedure 12(b)(6) to dismiss the *pro se* complaint
(the "Complaint") of plaintiff Joseph Cary ("Cary" or
the "Plaintiff"), in which the Plaintiff alleges that he was
subjected to unconstitutional conditions of confinement
while held in an intake area at Riker's Island for a five-
day period from July 13, 2017 to July 18, 2017. Based
on the facts and conclusions set forth below, the City's
unopposed motion to dismiss is granted.

**I. Facts & Prior Proceedings**
Plaintiff filed the Complaint on August 7, 2017, alleging
that he was subjected to unconstitutional conditions of
confinement while held in an intake area at Riker's Island
for a five-day period from July 13, 2017 to July 18, 2017. [1]

In his Complaint, Plaintiff alleges that he arrived at Rikers
Island on July 13, 2017 after being sentenced to five
days in jail for smoking in a park. On July 14, 2017,

Plaintiff was taken to a court hearing, and upon his
return to Rikers Island, he was placed in a "hot, dirty,
overcrowded cell where the toilet didn't flush," and that
featured a "nose pinching, stomach turning smell" while
he awaited housing. Plaintiff alleges that on July 15, 2017,
he complained to unnamed officers that he had not yet
been housed, that he had "heat sensitive conditions," that
he had been placed in the wrong building, and that he
could "no longer withstand the overcrowded, dirty, and
smelling cell because of [his] heat sensitive condition."
That same day, Plaintiff blacked out in his cell due to his
heat sensitivity. Plaintiff alleges that after he was awoken
by a fellow inmate, his nose began to bleed, and that a
fellow inmate informed a correction officer on duty of
his condition. The officer called for medical assistance
twice but received no answer, and although she had "no
knowledge" of his blackout, the officer tended to him with
"care and concern."

Plaintiff further alleges that he was escorted to the clinic
approximately two and a half hours after his blackout
incident. Plaintiff saw a prison doctor, and he informed
the doctor of his blackout event and that his head hurt.
The doctor informed him that his nose bleed was the most
pressing problem, but that if Plaintiff wanted his head
looked at, the doctor would set up an appointment and
offer the Plaintiff pain killers. Plaintiff declined both offers
for treatment.

**\*2** After seeing the doctor, Plaintiff was escorted to a
different cell "closer to the entrance," where the escorting
officer told Plaintiff that he could "get some clean air"
because the "outside door was open." Sometime shortly
after 6 pm on July 15, 2017, Plaintiff was transferred to
the C95 building at Rikers Island, and around 7 pm, he
was placed in cell #4, where he awaited housing. Plaintiff
stayed in cell #4 in the C95 building from the evening of
July 15, 2017 until the morning of July 17, 2017, when he
"was moved from the clean cell [he] was in with one other
inmate into an overcrowded, dirty, smelling cell where
the toilet didn't flush once again." Plaintiff further alleges
that, from July 17, 2017 to shortly after 1 am on July
18, 2017, he was unable to "groom himself properly" or
"speak to his family," and that he had been unable to sleep
due to "the fact of cutting and stabbing and not knowing
or trusting people," which allegedly "kept him on his feet."
Plaintiff was held in this cell until shortly after 1 am on
July 18, 2017, when he was housed in the "18 Lower 'B'
Side" housing unit.

Defendant filed the instant motion to dismiss on January 2, 2018, and the motion was marked fully submitted on February 14, 2018. No opposition or request for extension was received from the Plaintiff.

## II. <u>The Applicable Standard</u>

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly,* 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly,* 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.' " *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III. <u>The Defendant's Motion to Dismiss Plaintiff's Complaint Is Granted</u>

Construing the Complaint liberally, the Plaintiff has failed to state any claim upon which relief may be granted. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted) ("[W]hen the plaintiff proceeds *pro se,* as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."). The City has submitted authorities sufficient to establish that Cary has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a); to allege facts showing that the Defendants acted with deliberate indifference to Plaintiff's health and safety or to a serious medical condition; to allege facts showing that Plaintiff's alleged injury arose from some official policy or practice giving rise to municipal liability; and to participate in a physical, as required by the PLRA, 42 U.S.C. § 1997e(c).

**\*3** The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As such, exhaustion of administrative remedies is a prerequisite to the present suit. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002); *see also Simmons,* 2013 WL 1290268, at *7 (noting that Plaintiff's failure to exhaust administrative remedies is an affirmative defense). "Where ... a plaintiff concedes lack of exhaustion, or non-exhaustion is otherwise apparent from the face of the complaint, the Court may decide the exhaustion issue on a Rule 12(b)(6) motion to dismiss." *Simmons,* 2013 WL 1290268, at *8. Moreover, "dismissal on the basis of failure to exhaust is mandatory, [and] an inmate's claims can only proceed ... if, as to each claim, he has exhausted all available administrative remedies, including all appellate remedies provided within the [New York City Department of Correction] system." *Id.*, at *7.

Here, the relevant administrative procedures are as follows. The Department of Correction's Inmate Grievance and Request Program ("IGRP"), set forth in Department of Correction Directive 3376, requires inmates who wish to file a grievance to submit a form to grievance staff within ten business days of the incident giving rise to the grievance.[2] *See Garvin v. Rivera*, No.

13-CV-7054, 2015 WL 876464, at *3 (S.D.N.Y. Feb. 28, 2015). Within five business days of receiving the form, grievance staff must provide an informal resolution, (*see* IGRP § IV(G)(1)), after which the inmate will have five business days to appeal and request a formal hearing, (*see* IGRP § IV(G)(5)(b)). The formal hearing is conducted before the Inmate Grievance Resolution Committee, which issues a written disposition within five business days. (*See* IGRP § IV(I)(2).) Finally, within five business days of the commanding officer's decision, an inmate may appeal to the Central Office Review Committee, which must render a disposition within fifteen days of receipt of the appeal. (*See* IGRP § IV(J)(5).) "[A]n inmate may appeal if he does not receive a timely disposition at any stage" of the process. *Garvin,* 2015 WL 876464, at *3 (internal quotation marks omitted). "The administrative process is complete only when the [Central Office Review Committee] has issued its disposition." *Id.*

Plaintiff has failed to exhaust all available administrative remedies before commencement of the instant suit, thus dismissal is mandatory. The time period pertaining to Plaintiff's underlying grievances is July 13, 2017 to July 18, 2017. Plaintiff signed his Complaint on August 7, 2017, and mailed it on August 21, 2017. Therefore, even if Plaintiff acted expeditiously, it would take approximately five or six weeks from the filing of the initial grievance to complete the mandated grievance process. Even assuming Plaintiff filed his grievance on July 13, 2017, and if there was no delay at any stage of the process, it would have been impossible for Plaintiff to proceed through the entire grievance process, including all appeals, before Plaintiff filed the Complaint on August 7, 2017. Accordingly, Plaintiff has failed to exhaust his administrative remedies,

and on this basis alone, Defendant's motion is granted and the Complaint is dismissed without prejudice. *See Price v. City of New York*, No. 11 Civ. 6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (holding that it would have been impossible for the plaintiff to have pursued his grievance through all steps of the procedure in the 21 days between the alleged incident and the filing of his complaint).

**\*4** Moreover, based on the City's authorities, which are are appropriate and unopposed, Cary has similarly failed to state a claim under federal law relating to Defendant's alleged deliberate indifference to Plaintiff's serious medical condition; to demonstrate that Plaintiff's injury arose from some official policy or practice giving rise to municipal liability; and, to sufficiently allege that Plaintiff has suffered a physical injury, as required by the PLRA. Because Plaintiff has failed to state a claim arising under federal law, Plaintiff's request that supplemental jurisdiction be extended over his state law claims is declined.

**IV. Conclusion**
For the foregoing reasons, the Defendant's motion to dismiss is granted, and the Complaint is dismissed without prejudice.

It is so ordered.

**All Citations**

Slip Copy, 2018 WL 1581988

---

Footnotes

1  "Under the so-called 'prison mailbox rule,' a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court." *See Simmons v. Cripps*, No. 12-CV-106, 2013 WL 1290268, at *4 n.5 (S.D.N.Y. Feb. 15, 2013) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)) (finding that the plaintiff's complaint was deemed filed the day it was signed by the plaintiff). Plaintiff signed the Complaint on August 7, 2017, and therefore is considered to have filed the Complaint on that date.

2  Judicial notice has been taken of the IGRP and the foregoing materials related to the procedures for exhausting administrative remedies. *See* Fed. R. Evid. 201 ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding it proper for trial court to take judicial notice of state prison regulations concerning books and magazines).

---

**WESTLAW**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    3

2017 WL 3311244
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matththius COHEN, Plaintiff,
v.
Matthew WELCH, et al., Defendants.

9:16-cv-00593 (FJS/TWD)
|
Signed 07/11/2017

**Attorneys and Law Firms**

MATTHTHIUS COHEN, 15-A-4146, Clinton
Correctional Facility, P.O. Box 2000, Dannemora, NY
12929, pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General
of the State of New York, OF COUNSEL: RYAN
W. HICKEY ESQ., Assistant Attorney General, The
Capitol, Albany, NY 12224, Counsel for Defendants.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** This matter has been referred to the undersigned
for Report and Recommendation by the Honorable
Frederick J. Scullin, Jr., Senior United States District
Judge, pursuant to 28 U.S.C. § 636(b) and Northern
District of New York Local Rule 72.3(c). *Pro se* Plaintiff
Matththius Cohen, an inmate in the custody of the New
York State Department of Corrections and Community
Supervision ("DOCCS"), brings this action pursuant to 42
U.S.C. § 1983, alleging that on May 13, 2016, Corrections
Officer ("C.O.") Welch, C.O. Corrigeux, and Sergeant
("Sgt.") Vesneski subjected him to excessive force and
failed to intervene in violation of his Eighth Amendment
rights. (*See generally* Dkt. No. 23.) Presently before the
Court is Defendants' motion to dismiss for failure to
state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6) on the ground that Plaintiff failed to exhaust
administrative remedies. (Dkt. No. 26.) Plaintiff has
responded in opposition to Defendants' motion. (Dkt.

Nos. 29 and 35.) For the reasons set forth below, the Court
recommends that Defendants' motion be granted.

**I. BACKGROUND AND PROCEDURAL HISTORY**
The following relevant facts are derived from the face of
Plaintiff's amended complaint and are accepted as true for
the purposes of deciding the pending motion to dismiss.
*Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

On May 13, 2016, Plaintiff was performing his assigned
duties as a porter at Upstate Correctional Facility
("Upstate") and was "zambonieing [sic] around the
controle [sic] tower." (Dkt. No. 23 at 6.[1]) C.O. Welch
and several other officers approached the area with an
inmate who was under escort to his cell. *Id.* C.O. Welch
yelled at Plaintiff to get out of their way, which Plaintiff
did. *Id.* Shortly thereafter, C.O. Welch tracked Plaintiff
down in the B gallery of 11 Building and began yelling at
him in a racially offensive manner about Plaintiff's alleged
failure to get out of the officers' way. *Id.* at 7. C.O. Welch
also threatened Plaintiff with serious physical harm. *Id.*
at 8. The "work crew officer" told C.O. Welch to "lock
[Plaintiff] up." *Id.* C.O Welch brutally assaulted Plaintiff.
*Id.* Neither C.O. Corrigeux nor Sgt. Vesneski acted to stop
the assault. *Id.* at 9.

Thereafter, while under escort by C.O. Welch, C.O.
Corrigeux, and Sgt. Vesneski, C.O. Welch subjected
Plaintiff to racial insults and ongoing threats of serious
harm. *Id.* Specifically, C.O. Welch told Plaintiff that if
Plaintiff reported the assault, he would suffocate Plaintiff
with his pillow during the night. *See id.* In the course
of returning Plaintiff to his cell in 12 Building, C.O.
Corrigeux attempted to break the pinky and ring fingers
on Plaintiff's right hand by bending them sideways; Sgt.
Vesneski directed C.O. Corrigeux to stop. *Id.* at 10.
Plaintiff alleges that he "turned in grievances," to the "IG
Office," counselors, program committee, commissioner,
and superintendent but they have "never been answerd
[sic]." *Id.* at 2-3.

**\*2** Plaintiff's complaint, signed and dated May 14, 2016,
was received by the Court on May 23, 2016. (Dkt. No.
1.) By Decision and Order dated July 25, 2016, only
Plaintiff's Eighth Amendment excessive force and failure
to intervene claims against C.O. Welch, C.O. Corrigeux,
and "Sgt. Doe" survived the Court's *sua sponte* review.
(Dkt. No. 10.) On October 11, 2016, Plaintiff filed an

2017 WL 3311244

amended complaint substituting "Sgt. Vesneski" for "Sgt. Doe." (Dkt. No. 24. [2])

Defendants now move to dismiss Plaintiff's amended complaint for failure to state a claim. (Dkt. No. 26. [3]) Plaintiff opposes Defendants' motion. (Dkt. Nos. 29 and 35.)

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly,* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotations omitted). A complaint which "tenders 'naked assertion [s] devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

**\*3** Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau,* No. 9:07-CV-0464 (TJM), 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) [4] (collecting cases); *see Donhauser v. Goord,* 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) ("where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.' "), *vacated in part on other grounds,* 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, the Second Circuit considered the plaintiff's affidavit submitted in opposition to motion to dismiss).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake,* ––– U.S. ––––, 136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under

the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nevertheless, dismissal is appropriate if it is clear from the face of the complaint that the plaintiff failed to exhaust administrative remedies. *Id.* at 215-16; *Lee v. O'Harer*, No. 9:13-CV-1022 (TJM/ATB), 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted).

In New York State prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a)(1). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

 **\*4** Second, a grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* §

701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

There are also special procedures that may be used when the grievance is categorized as "harassment." *Id.* § 701.8. A grievance alleging harassment by staff may be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. CORC has thirty days to resolve any appeal. *Id.* §§ 701.8(f), 701.8(i) (incorporating by reference § 701.5(d)(2)(h)).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step.' " *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required three steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on

the availability of administrative remedies [.]" (quotations and citations omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60.[5] First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Whether a plaintiff has exhausted his administrative remedies is a question of law to be decided by the court. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).

### B. Analysis

**\*5** Defendants argue that it is clear from Plaintiff's filings that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. (Dkt. No. 26-1 at 8.) The Court agrees.

Specifically, Plaintiff's claims arise from events that took place on May 13, 2016. (Dkt. No. 23 at 6.) Plaintiff also claims he "turned in grievances" to the "IG Office" but they had "never been answerd [sic]." *Id.* at 2-3. Plaintiff then filed this action on May 14, 2016, just one day after the alleged incidents. (Dkt. No. 1 at 15.[6]) Plaintiff's complaint was received and formally filed by the Court on May 23, 2016, only ten days after the alleged events occurred. *Id.* Under the regulations, the first step of the grievance process should be completed within sixteen calendar days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b). If an inmate appeals an adverse decision to the superintendent, the superintendent must generally decide the issue within twenty calendar days from the time the appeal was received. *Id.* § 701.5(c). Finally, CORC must

decide an appeal within thirty calendar days from the date that such an appeal is filed. *Id.* § 701.5(d).

In light of this procedure and based on the facts alleged in the amended complaint, it is implausible that Plaintiff was able to exhaust his administrative remedies before commencing this action. *See, e.g.*, *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 581-82 (S.D.N.Y. 2015) (dismissing complaint for failure to exhaust where plaintiff commenced action ten days after alleged incidents occurred); *Perez v. City of New York*, No. 14 Civ. 07502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing action where complaint was signed one week after the events in question allegedly occurred); *Price v. City of New York*, No. 11 Civ. 6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (granting motion to dismiss where it would have been impossible for the plaintiff to have exhausted his administrative remedies in the twenty-one days between the alleged incident and the filing of his initial complaint).

Plaintiff's claim that he informed other prison officials, including the Commissioner and Superintendent of his grievances, does not excuse his failure to exhaust. (*See* Dkt. No. 23 at 2.) Indeed, it is well-settled that "[s]uch correspondence does not satisfy exhaustion and falls outside of the grievance procedures." *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (collecting cases); *see also Geer v. Chapman*, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.").

**\*6** Similarly, Plaintiff's claim that his grievances were never answered does not excuse his failure to exhaust. (*See* Dkt. No. 23 at 3.) As discussed above, a prisoner must proceed through all three levels of the IGP to satisfy the PLRA's exhaustion requirement. "Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC." *Hernandez v. Coffey*, No. 99-civ-11615 (WHP), 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003); *see also Muhammad v. Corr. Officer Douglas*, No. 15-CV-0935 (NSR), 2016 WL 3082657, at *4 (S.D.N.Y. May 26, 2016) ("Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first step of

exhaustion."); *Arce v. Keane*, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."). Only after an inmate has properly exhausted all three levels of review, including receipt of a decision from CORC, may an inmate seek relief pursuant to Section 1983. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

Nevertheless, Plaintiff maintains his administrative remedies were not "available." (Dkt. No. 35.) Specifically, Plaintiff argues that "[w]hen prison [sic] officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." *Id.* at 1. Plaintiff further maintains that his Eighth Amendment claims should not be dismissed because his grievances were not "answerd [sic] in a timly [sic] fashion which made [Plaintiff] feel very unsafe and that [his] life was in danger," thereby leaving Plaintiff with "no other option" but "to file the [§] 1983 for [his] safety." *Id.* Neither argument is convincing.

As an initial matter, Plaintiff claims he turned in grievances to the IG Office, which indicates that the procedure was "available" to him. Further, as discussed above, even if Plaintiff did not receive a timely response from the IGRP, he was required to complete steps two and three of the IGP. *See Heyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ... if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy.") (quotation marks, alteration, citation, and footnote omitted); *see also Warren v. Bealey*, No. 9:12-CV-1318 (TJM/RFT), 2014 WL 4715863, at *9 n.8 (N.D.N.Y. Sept. 22, 2014) ("in the event that the IGRC or superintendent ... do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC") (collecting cases). Indeed, "[o]nly upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court." *Id.* at 9. (citations omitted).

Moreover, to the extent Plaintiff argues "special circumstances" justify his failure to comply with the exhaustion requirements before commencing this action,

"that avenue has been foreclosed." *Riles v. Buchanan*, 656 Fed.Appx. 577, 581 (2d Cir. 2016). Specifically, the Supreme Court has held that "[c]ourts may not engraft an unwritten 'special circumstances exception' onto the PLRA's exhaustion requirement." *Ross*, 136 S. Ct. at 1862; *see also Williams*, 829 F.3d at 123 (*Hemphill* and *Giano* have been abrogated by *Ross* to the extent those decisions established the "special circumstances" exception from the exhaustion of administrative remedies requirement in the PLRA). As the Second Circuit explained in *Williams*, "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams*, 829 F.3d at 123.

**\*7** Lastly, any efforts Plaintiff may have made *since* the filing of his complaint would not cure his failure to exhaust because the PLRA requires that administrative remedies be exhausted *before* commencing a lawsuit. *See Neal*, 267 F.3d at 121 ("[E]xhausting administrative remedies after a complaint is filed will not save a case from dismissal."); *see also Chalif v. Spitzer*, No. 9:05-CV-1355 (LEK/DEP), 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008) (complete exhaustion must have occurred prior to the time the action was commenced); *e.g.*, *Pettus v. McCoy*, No. 9:04-CV-0471 (TJM), 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (dismissing action because the inmate-plaintiff filed the complaint "prior to fully completing the administrative review process").

Based upon the foregoing, the Court recommends granting Defendants' Rule 12(b)(6) motion for failure to state a claim.

### C. Dismissal of Action

The Second Circuit has "recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." *Neal*, 267 F.3d at 123 (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)). Thus, where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004); *see, e.g.*, *Pettus*, 2006 WL 2639369, at *1-2 (dismissing complaint without prejudice for failure to exhaust). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper

for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Id.* at 86; *see, e.g.,* *Hilbert v. Fischer*, No. 12 Civ. 3843(ER), 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (collecting cases).

Here, the time in which Plaintiff had to exhaust his May 13, 2016, Eighth Amendment claims has likely expired. However, because Plaintiff has raised an "availability" argument in his opposition to Defendants' motion, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the Court recommends dismissal without prejudice to refile following complete exhaustion of available administrative remedies.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 26) be **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 23) be **DISMISSED WITHOUT PREJUDICE**

for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Slip Copy, 2017 WL 3311244

Footnotes

1   Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

2   The Court notes that Plaintiff's amended complaint is a photocopy of the original complaint with references to "Sgt. Doe" (also referred to as "[o]n duty [Sergeant] during incident" or "[o]n duty 11 Building [Sergeant]") crossed-out and replaced with the handwritten name "Vesneski." The amended complaint is otherwise identical to the original complaint. (*Compare* Dkt. No. 1 *with* Dkt. No. 23.)

3   On October 26, 2016, C.O. Welch and C.O. Corrigeux filed their motion to dismiss for failure to state a claim. (Dkt. No. 26.) Shortly thereafter, Sgt. Vesneski received a copy of the summons and amended complaint. (Dkt. No. 30.) By text order entered December 21, 2016, Sgt. Vesneski's request to join in the pending motion to dismiss for failure to exhaust administrative remedies was granted. (Dkt. Nos. 32 and 34.)

4   The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

5   According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

6   Under the "prison mailbox rule," a *pro se* complaint submitted by a prisoner is deemed "filed" at the time it was delivered to "prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). The date that a complaint is signed is the date that the prisoner is presumed to have handed that complaint to a prison guard for mailing. *See* *Garraway v. Broome Cnty.*, No. 5:03-CV-0681 (TJM), 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006). The final page of Plaintiff's original complaint is dated May 14, 2016, and bears Plaintiff's signature. (Dkt. No. 1 at 15.)

7   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**Cohen v. Welch, Slip Copy (2017)**

2017 WL 3311244

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

### I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

### II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

### III. Discussion

#### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

#### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 1232227
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Domingo BORGES, Plaintiff

v.

Superintendent Michael
McGINNIS, et al., Defendants.

No. 03-CV-6375 CJS.
|
April 26, 2007.

**Attorneys and Law Firms**

Domingo Borges, Marcy, NY, pro se.

Gary M. Levine, New York State Office of the Attorney
General, Rochester, NY, for Defendants.

DECISION AND ORDER

CHARLES J. SIRAGUSA, United States District Judge.

**\*1** This is an action in which the plaintiff, a prison
inmate, is suing concerning his conditions of confinement,
pursuant to 42 U.S.C. § 1983. Now before the Court is
defendants' motion [# 45] for summary judgment. For the
reasons that follow, the application is granted and this
action is dismissed.

BACKGROUND

Unless otherwise noted, the following facts are taken
from defendants' Rule 56 Statement of Facts, which is
uncontested. [1] At all relevant times, plaintiff was an
inmate at Southport Correctional Facility ("Southport.").
On or about November 24, 2001, corrections staff
at Southport observed plaintiff receive from a visitor
(his mother) what appeared to be contraband drugs.
Suspecting that plaintiff had subsequently ingested the
contraband, corrections staff placed him in an observation
cell, where he remained from 1:00 p.m. on November 24,
2001 until 12:20 p.m. on November 27, 2001. Plaintiff
was videotaped during this entire period, except when he
covered the camera, and in support of the instant motion,

defendants submitted to the Court 10 VHS videotapes of
plaintiff in the cell.

The observation cell was "a strip cell which is used
for one on one drug watch." (Pl.Dep.19). According
to Department of Correctional Services' ("DOCS")
Directive 4910, inmates suspected of ingesting contraband
are kept in such observation rooms until they twice pass
stools that are negative for contraband. (McGinnis Aff.
[# 56], Ex. A). Plaintiff's observation cell contained only
a sleeping platform. There was not a functioning toilet,
though plaintiff was provided with a bedpan when he
needed to urinate or defecate.

When he was placed in the isolation cell, plaintiff was
given a paper gown, paper shoes, and a thin mattress.
Plaintiff requested that he also be given a blanket, to which
he was entitled pursuant to Directive 4910. However, staff
refused to provide a blanket, because they were unaware
that it was required by Directive 4910. More specifically,
Corrections Officer ("C.O.") Scott Marshall ("Marshall")
states, in an affidavit, that he inadvertently failed to
provide plaintiff with a blanket, because he thought that
plaintiff was supposed to be treated similarly to inmates
who are on suicide watch, who do not receive blankets.
(Marshall Aff. [# 55] ).

On or about November 25th, plaintiff punched a glass
window in his cell. Though he did not damage the glass,
plaintiff later indicated that he thought his hand was
broken. A staff nurse, Carmen Miller, R.N. ("Miller"),
examined plaintiff's hand on November 26th and reported
"zero swelling, zero deformity. Good range of motion.
No apparent distress." (Pl.Dep.71). There is no indication
that plaintiff's hand actually was fractured, or that he
suffered anything more than temporary discomfort from
punching the window.

Early on November 26, 2001, plaintiff covered the video
camera monitoring his cell with a piece of his paper
gown. Corrections staff gave plaintiff several direct orders
to remove the obstruction, but he refused. Later that
day, plaintiff asked Sergeant Gary Morse ("Morse") for
a blanket. Morse spoke with Captain Joseph Bellinier
("Bellnier"), who indicated that, pursuant to Directive
4910, plaintiff was entitled to receive a pillow, sheets, and
blanket. Bellnier also issued a written memorandum to
that effect. However, as a result of plaintiff covering the
video camera and refusing the direct orders to remove the

obstruction, another supervisor, Captain William Wilcox ("Wilcox"), placed a deprivation order against plaintiff, depriving him of "bed linen, pillow, [and] blankets," though he was allowed to keep his mattress and gown. (Wilcox Aff. [# 68] Ex. A). In other words, although plaintiff would have received a blanket pursuant to Bellnier's order had he not covered the camera, he did not receive a blanket due to the resulting deprivation order.

 *2  Once plaintiff removed the paper obstruction from the camera, Sergeant Morse brought him hot water, a basin, soap, washcloth, toothbrush, and toothpaste. (Pl.Dep.57). Later that day plaintiff returned the hygiene items, and corrections staff found a balloon containing marijuana hidden inside the toothpaste tube. (Bellnier Aff. [# 50], Ex. B, p. 4). Plaintiff was later found guilty of possessing marijuana at a tier disciplinary hearing, and served 12 months in the Segregated Housing Unit. (Pl.Dep.62-63).

In addition to the personal hygiene items detailed above, corrections staff also provided plaintiff with his regular meals during his stay in the observation room, though he alleges that he was denied breakfast on the morning of November 26th. (Pl.Dep.65-66).

During the three-day period that plaintiff was in the isolation cell, outside temperatures at Southport ranged between 62 and 40 degrees Fahrenheit. Plaintiff contends that a window in his cell was open during this period. However, while it is undisputed that plaintiff complained about the cell being cold, there is no indication that he complained specifically about the window being open. Plaintiff does not know what the temperature was in the cell, but he estimates that it was "probably 50 degrees, around there. Probably less." (Pl.Dep.27). In general, he contends that it was "cold." (Pl.Dep.24-26). Defendants, on the other hand, indicate that the indoor temperature during that period was not extremely cold. (Pl.Dep.26). Plaintiff did not suffer any physical injuries as a result of being kept in the isolation cell, except that he claims to have caught a cold, which lasted "a couple of days." (Pl.Dep.58-60).

Corrections officers observing plaintiff made notes in a log every 15 minutes during his stay in the observation room. (Bellnier Aff. [# 50] Ex. C). Many, if not most, of the entries indicate that plaintiff was lying on the bed, asleep or appearing to be asleep. Other entries indicate

that plaintiff was exercising, walking around the cell, sitting on the floor, or looking out the window. (*Id.*). These observations appear accurate, based on the Court's viewing of randomly-selected portions of the videotape exhibits. Plaintiff was removed from the cell temporarily on the morning of November 27th, so that the cell could be cleaned.

Plaintiff had no problems or "bad blood or ill will" with any of the defendants prior to being placed in isolation. (Pl.Dep.8-9). Although plaintiff contends that corrections staff denied his requests for a blanket, he does not contend that they verbally abused him or used any type of epithet toward him.

Defendants filed the subject summary judgment motion on December 28, 2005. In support of the motion, defendants submitted affidavits from the individual defendants, the aforementioned video tapes, photographs of the cell, log notes, climatological data, and plaintiff's deposition transcript. The affidavits of Superintendent Michael McGinnis ("McGinnis"), Deputy Superintendent Michael Corcoran ("Corcoran"), Assistant Deputy Superintendent Lawrence Weingartner ("Weingartner"), Lt. David Augustine ("Augustine"), Lt. Richard Donahue ("Donahue"), and Lt. Charles Marshall ("Marshall") all essentially indicate that they did not personally know that plaintiff was in the observation cell or that he was complaining of being cold. On the other hand, Bellnier, Wilcox, Morse, Miller, Marshall, Sgt. Richard Moriarty ("Moriarty"), Sgt. John Morton ("Morton"), C.O. William Meck ("Meck"), C.O. James O'Herron ("O'Herron"), C.O. Kevin Qualey ("Qualey"), C.O. Lynn Rice ("Rice"), C.O. Douglas Westervelt ("Westervelt"), C.O. Alan Wheeler ("Wheeler"), and C.O. Byron Potter ("Potter"), all essentially indicate that they knew that plaintiff was in the observation cell, but deny that the cell was dangerously cold, though some acknowledge that plaintiff complained to them of being cold. And finally, defendant Thomas Giltner ("Giltner") indicates that he was not employed at Southport during the relevant three-day period. Defendants contend that: 1) all claims against them in their official capacities must be dismissed; 2) plaintiff has not established a factual basis for imposing supervisory liability; and 3) plaintiff's conditions of confinement did not violate the Eighth Amendment.

**\*3** As part of defendants' motion, they filed and served a "Notice to Pro Se Litigants Opposing Summary Judgment" as required by Local Rule 56.2 and *Irby v. New York City Transit Authority,* 262 F.3d 412 (2d Cir.2001). *See,* Notice [# 71]. The Court subsequently issued a Motion Scheduling Order [# 72], which directed plaintiff to file and serve a response on or before February 28, 2006. Plaintiff has never filed a response to the summary judgment motion, although he has filed an amended complaint, which amended the caption of the action, as well as a motion for appointment of counsel, which was denied.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied,* 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249; *see also,* FED.R.CIV.P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse

party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED.R.CIV.P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

**\*4** At the outset, the Court notes that, because plaintiff is proceeding *pro se,* the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). However, plaintiff did not respond to defendants' motion, even though he was specifically advised of the requirements of Rule 56. In that regard, the Court notes that Rule 56(e) is clear that, when a properly supported summary judgment motion is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Based upon the entire record, the Court does not believe that plaintiff's failure was inadvertent. Rather, it appears that the facts of his claim are truly not in dispute, and that the motion can be resolved as a matter of law.

Turning, then, to the merits of plaintiff's claim, he is suing pursuant to 42 U.S.C. § 1983. The principles of law applicable to such claims are well settled:

In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, e.g., *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977).

* * *

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122, 127 (2d Cir.2004).

Here, plaintiff contends that defendants violated his Eighth Amendment rights by keeping him in a cold cell for three days without a blanket. For claims alleging unconstitutional conditions of confinement, it is clear that

> **\*5** a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). The Second Circuit has stated the elements of such a claim as follows:

> While the Eighth Amendment's prohibition against cruel and unusual punishment does not

mandate comfortable prisons, the conditions of confinement must be at least humane. In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety. A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates.

*Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001) (citations and internal quotations omitted).

As to the objective prong of the analysis set forth above, "an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." *Id. (citing Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988)). However, an inmate cannot establish an Eighth Amendment claim merely by establishing that he was uncomfortably cold for a short period. For example, in *Grant v. Riley,* No. 89 Civ. 0359(MBM), 1993 WL 485600 at \*4 (S.D.N.Y. Nov.24, 1993), the court granted summary judgment for defendants, stating:

> Plaintiff's Eighth Amendment claim is based on the allegation that there was no heat in his cell for at least 3 days. Plaintiff asserts that he had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic. This Circuit has found that "deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988). However, plaintiff does not claim that any defendant deliberately subjected him to the cold, and has alleged only a three-day period of exposure. *See Roach v. Kligman,*

412 F.Supp. 521, 527 (E.D.Pa.1976) (short period in cold, leaky cell does not violate Eighth Amendment). Furthermore, plaintiff did not suffer any harm as a result of these conditions. Plaintiff thus has failed to allege treatment that offends "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and has not stated an Eighth Amendment claim.

**\*6** (Some internal quotation marks omitted); *see also, Smith v. Burge,* No. 9:03-CV-0955 (LEK/GHL), 2006 WL 2805242 at \*7 (N.D.N.Y. Sep.28, 2006) (" "Heat is a basic human need; and claims of lack of heat may state a claim. If, however, the condition is not sufficiently prolonged or severe, it does not rise to the level of an Eighth Amendment violation.") (citations omitted).

In this case, plaintiff was kept in an observation cell for three days, because corrections staff were attempting to recover contraband which plaintiff had ingested during a visit with his mother. Defendants' suspicions in this regard were well-founded, and they eventually recovered a quantity of marijuana inside a balloon, which apparently plaintiff had swallowed. Although plaintiff was not given a blanket, he was given a paper gown, paper slippers, and a thin mattress. In this regard, plaintiff was treated in the same manner as inmates on suicide watch. As to the mattress, the Court notes that it was a thin mattress pad that plaintiff actually used as both a shawl and a blanket. Plaintiff spent much of his time lying on the bed, covered with the "mattress," and apparently asleep. For reasons that no one has explained, a window in the cell was open, and the cell temperature was around 50 degrees, which undoubtedly and unfortunately made plaintiff uncomfortable. Plaintiff was provided with meals, personal hygiene items, and medical attention.

Moreover, it is undisputed that plaintiff would have been provided with a blanket on November 26th if he had not violated facility rules by covering the security camera.

Overall, plaintiff does not allege that he suffered anything more than frustration and discomfort as a consequence of the coldness of his cell. Thus, his claim does not rise to the level of a condition of confinement that violates the Eighth Amendment. Moreover, even if plaintiff could establish the objective element of an Eighth Amendment claim, he has not submitted evidentiary proof in admissible form to refute defendants' affidavits averring that they were not subjectively deliberately indifferent to his condition. Further, even assuming, *arguendo* that plaintiff had established an Eighth Amendment violation as to some defendants, which he has not done, the official capacity claims and supervisory liability claims would nevertheless have to be dismissed, as plaintiff has not established any basis for them. Finally, Giltner would be entitled to summary judgment in any event, because there is no evidence that he was employed at Southport on the relevant dates.

CONCLUSION

For all of the foregoing reasons, defendants' summary judgment motion [# 45] is granted and this action is dismissed.

So Ordered.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1232227

Footnotes

1    "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1(c).

2013 WL 1234930
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Kevin WALKER, Plaintiff,
v.
Dora B. SCHRIRO, et al., Defendants.

No. 11 Civ. 9299(JPO).
|
March 26, 2013.

*MEMORANDUM AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** This civil rights case, brought by Plaintiff Kevin Walker against a number of prison officials, arises from a course of events that pivot around Plaintiff's efforts to obtain medically authorized supportive footwear while incarcerated. The Second Amended Complaint, filed *pro se* and therefore interpreted to allege the strongest claims it suggests, alleges due process, equal protection, First Amendment retaliation, access to courts, Eighth Amendment, and products liability violations. Defendants have moved to dismiss all claims. For the reasons that follow, this motion is granted in part and denied in part.

**I. Background**
The facts stated in this background section are drawn from allegations made in Plaintiff's Second Amended Complaint. For purposes of this motion, these allegations are presumed to be true. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006).[1]

On August 10, 2011, Plaintiff was placed in the New York City Department of Correction V.C.B.C. (also known as "the Boat"). While being processed into the facility, Plaintiff was informed by Defendant Daly that a prison order prevents inmates from wearing any personal footwear. Plaintiff objected to Daly and explained that he has a medical condition that necessitates special footwear. Specifically, Plaintiff requires custom sneakers with extra support, cushioned soles, ankle support, and special arch support. In contrast, D.O.C. standard-issue sneakers lack

these features. Daly responded by telling Plaintiff to sign up for sick call.

On August 15, 2011, Plaintiff saw a doctor and explained this situation. The doctor examined Plaintiff, determined that Plaintiff has flat feet and weighs over 350 pounds, and stated that if Plaintiff did not wear suitable sneakers he would experience pain and swelling in his feet and back. Plaintiff returned to sick call several times due to extreme pain from his deficient footwear and was given Tylenol, even though he explained to the doctor that this medicine was inadequate. The doctor indicated that Plaintiff would soon receive different pain medication.

On August 29, 2011, Plaintiff was moved to G.R.V.C. (known as "the Beacon"). He signed up for sick call and planned on seeing a foot and back specialist on September 6, 2011, but this never happened (for reasons unspecified in the Complaint) and Plaintiff remained in "extreme pain." The doctor continued to prescribe only Tylenol, even after indicating that Plaintiff would receive more effective medication.

On September 13, 2011, Plaintiff spoke with Dr. Pravin Nanjan, who indicated that the medicine had not arrived because the order had been placed incorrectly. Ranjan prescribed Plaintiff stronger medication, provided permits for a double mattress to alleviate Plaintiff's severe back pain, and provided a permit for Plaintiff to wear his supportive sneakers. Around this time, Plaintiff spoke with Defendant Washington, explained his situation and his receipt of a permit, and was informed by Washington that Plaintiff's wife could bring custom sneakers to the prison for Plaintiff. Also around this time, Plaintiff learned from his wife that she had sent a pair of permissible sneakers and they had been returned—even though Plaintiff had never been notified of this package. When Plaintiff asked Defendant Hart about this package, "in hopes that defendant would understand because she too is a big person," she "became very abusive and stated 'maybe your fatass need to loose [sic] weight and your feet would not bother you!' "

**\*2** On September 17, 2011, Plaintiff's wife brought Plaintiff's custom sneakers. Defendant Lespinasse prohibited Plaintiff from keeping the sneakers, adding that Washington had told her not to allow the sneakers. She "laughed" when Plaintiff presented her with his medical permit.

Several days later, Plaintiff explained his situation to Defendants Lemon and Fraizer. Lemon stated that he would look into it, but that he had told the doctors to stop giving out permits for sneakers. A week later, Lemon confirmed to Plaintiff that he told the doctors to stop issuing medical permits for prisoners and added that he "runs G.R.V.C., not the warden, not the doctors, me! Deputy of security!" Lemon and Frazier then discussed their desire to set a precedent that would prevent all inmates from obtaining medically prescribed footwear. Lemon added that Plaintiff could get his sneakers by offering information on what was happening in the jail, an offer that Plaintiff refused by telling Lemon "that he was losing his fucking mind!"

On September 19, 2011, Plaintiff asked Defendants Williams and Best for help with his footwear situation. Williams called someone and then told Plaintiff that he had "pissed someone off" and "there was nothing he could do to help." When Plaintiff spoke to Best, she replied that "nobody in this building (GRVC) get their personal footwear regardless of a medical or not, it's the building rules, if it's a problem we ship your ass out to another jail, its just that simple."

After these events, Plaintiff's unit was subjected to a routine search. Harris arrived at his cell, explained that Plaintiff had "pissed somebody off," and, without any process known to Plaintiff, gave him a "green Id ICR card; ICR is the acronym for Inmate Contraband Receiver." Harris cursed at Plaintiff and promised that Plaintiff would never get his custom footwear. Receipt of an ICR card entails a number of onerous disciplinary consequences, including more extensive searches of an inmate's cell, prohibitions on work outside one's housing unit, and more thorough searches during visits by family.

Several days later, Plaintiff explained his medical and ICR situation to Defendant Garcia. Garcia replied that nobody gets to wear special footwear and that corrections officers "do what we want." Garcia reiterated that Plaintiff had "pissed someone off" and referred to prior litigation involving Plaintiff before Judge William H. Pauley of this District.

In the middle of October 2011, Defendant Anku and other officers searched Plaintiff's housing unit. The inmates were told to get down on their knees. Plaintiff told

Anku that Plaintiff's medical condition would cause severe pain if he remained in that position; Anku replied by cursing at Plaintiff and emphasizing that he did not care about Plaintiff's medical condition. This caused Plaintiff "extreme pain" for 30–45 minutes.

On October 17, 2011, Plaintiff was called to appear concerning his grievances against Lemon arising from denial of medically appropriate footwear notwithstanding a medical permit. Defendant Moultre told Plaintiff that his request for a hearing had been denied and that the grievance had been rejected. Moultre stated "I don't give a fuck about no medical." As they argued, Defendants Smith and Hines arrived. Plaintiff explained his footwear situation and medical permit. Smith replied that "we are setting standards throughout Rikers Island that in the Beacon (GRVC) nobody gets to wear their personal sneakers, regardless of a medical." Smith added that he would speak to Lemon about Plaintiff's concerns. Plaintiff returned to his cell and wrote to Defendant Agro about his problems.

*3 Ten to twenty minutes later, Lemon came by and told Plaintiff that his subordinates would be dealing with the situation. Thirty minutes later, Plaintiff was "packed up and removed from the housing unit to a waiting bus to C–95." Plaintiff objected to non-defendant Captain Carter that he could not go to C–95; Carter replied that he had his orders. Upon arrival at C–95, Plaintiff explained to non-defendant C.O. Jacobs that he wasn't supposed to be on Rikers Island, "especially this building per O. S.I.U. (security)." Jacobs sent for security. Ten minutes later, Defendant Williams "came to the bullpens ... and stated 'I know who the fuck you are, you got a lot of balls even coming in this building'!" At Williams' order, Plaintiff was confined to the intake bullpens for two days without food, shower, linen, running water, or a bathroom. Plaintiff believes this conduct was in retaliation for a civil rights lawsuit filed by Plaintiff in 2008 against Williams and several other guards. The next morning, Plaintiff's wife called security and spoke with Defendant Letizia, "who told her, 'don't worry we will take care of him and laughed.' " Plaintiff and his wife interpreted this as a threat.

On October 19, 2011, Plaintiff was moved to M.D.C., where the corrections personnel similarly refused to honor his medical permit. At M.D.C., Plaintiff was told to see a foot specialist, but this appointment was cancelled because

Plaintiff could not fit into any of the orange jumpsuits prerequisite to trips outside the prison facility. Plaintiff grieved this situation several times, but has not yet been fitted for a jumpsuit. Many of his medical appointments and physical therapy sessions have been cancelled as a result.

Plaintiff has seen two podiatrists, one at West Facility and one at M.D.C., both of whom agreed that he should wear supportive sneakers. At this point, non-defendant Deputy of Security Colon stated that Plaintiff could wear custom sneakers only if they are "PUMA" brand. Plaintiff's wife set out in search of suitable Puma brand sneakers and sent them to Plaintiff, but Plaintiff was denied access to the sneakers for 30–45 days while Colon inspected them. In total, Plaintiff suffered 7–8 months of "extreme pain in [his] foot and ankles," and his lower back, with only Tylenol to alleviate this condition.

On March 28, 2012, Plaintiff was returned to the Boat. Upon his arrival, Daly—who was not at the time a named defendant in this action—learned of Plaintiff's lawsuit and threatened Plaintiff, adding that he had "something" for Plaintiff upstairs. Plaintiff immediately spoke to Defendant Morris and explained his fear of Daly's threat. Morris replied "don't worry about it, just go to your housing area." Even though his classification did not merit such treatment, Plaintiff was sent to a high classification housing unit.

The next morning, Plaintiff called the Inspector General office and reported Daly's threat. He also called the Board of Corrections and filed a complaint. At 2 p.m., Defendant Bacote arrived at Plaintiff's housing unit to discuss the matter. At Becote's request, Plaintiff showed Becote the initial complaint in this case and noted where it mentioned Daly. Becote told Plaintiff and another inmate who had witnessed this whole course of events to remain by the officer station. An hour later, Becote arrived with a team of officers clad in riot gear. Plaintiff was handcuffed and taken to the intake bullpens, where he remained for five hours.

**\*4** Non-defendant Captain Calise took statements from Plaintiff and the other inmate, and Plaintiff was then led by Morris to the medical clinic. Upon leaving the clinic, Morris, Bacote, Daly, and two other officers "tried to take [P]laintiff in a secluded area by the elevators and [P]laintiff to walk in the area with all five (5) officers, which (3)

are defendants." Morris then ordered Plaintiff to "play the wall" while Daly applied tight handcuffs. Plaintiff was returned to a high classification house, threatened by Bacote and Daly, and released from the handcuffs.

On April 2, 2012, Plaintiff was called to the security office and given a ticket by Bacote, who told Plaintiff to "shut the fuck up." The next day, Bacote walked by Plaintiff in a threatening manner. On April 5, 2012, Bacote and two other officers taunted and threatened Plaintiff in the housing unit. The Warden of V.C.B.C. did not respond to Plaintiff's request that she intervene in this course of events. Plaintiff received a ticket for disciplinary charges fabricated by Bacote. At the hearing on this ticket, Bacote successfully urged the hearing officer to give Plaintiff the maximum penalty of forty days. Plaintiff believes that throughout this period, Bacote, Morris, and Daly were retaliating against plaintiff. In August 2012—several months after these events—Bacote continued to retaliate against Plaintiff by stealing his legal papers, breaking Plaintiff's personal glasses, arranging for repeated searches of Plaintiff's cell, threatening Plaintiff, and interfering with Plaintiff's personal mail.

Plaintiff reports that he remains in extreme pain due to improper footwear, that he has been rushed to Bellevue Hospital on one occasion because of swelling in his ankles, and that he is still taking Tylenol with codeine twice per day. Plaintiff has sued Defendant Barker, the supplier of standard inmate footwear to the New York City Department of Correction, for "failure to notify the public that the product that he is selling has not only a defect in the design but that it would cause serious injuries to those that wear it for an extended period of time ... and that it is not suggested that these sneakers be [worn] for a specific period of time." Plaintiff adds that Barker has failed to warn the public that his sneakers are not suitable for extended wear or for use by people who weigh a certain amount and have certain foot problems.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006) (quotations omitted). That said, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted).

**\*5** "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest." Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (citations omitted). The pleadings filed by pro se litigants thus merit "special solicitude." *Ruotolo,* 28 F.3d at 8.

### III. Discussion

In the Complaint, Plaintiff identifies five causes of action: (1) violations of Plaintiff's due process and equal protection rights by Agro, Lemon, Fraizer, Garcia, Harris, and Schriro when Plaintiff was placed on ICR status without appropriate procedure; (2) retaliation against Plaintiff by Bacote, Morris, Daly, Garcia, Lemon, Harris, and Williams for filing a civil complaint and numerous grievances, retaliation against Plaintiff by Williams for Plaintiff's prior civil complaint before Judge Pauley, and retaliation against Plaintiff by Bacote for the filing of this civil action; (3) violations of Plaintiff's Eighth Amendment rights by Williams, who kept Plaintiff locked in the intake area for two days, and by Bacote, who forced Plaintiff to sleep in the intake area on a number of occasions while moving Plaintiff out of the building; (4) violations of Plaintiff's Eighth Amendment rights by Schriro, Agro, Lemon, Fraizer, Williams, Best, Smith, Garcia, Washington, Lespinasse, Hart, Hines, Aknu, and Moultrie through deliberate indifference to Plaintiff's need for medical treatment, and by Barker through deliberate indifference to the public's medical need in warning of design defects in his products; and (5) a products liability claim against Barker for design flaws and failure to warn. The Court generally agrees with Plaintiff that the facts alleged in the Complaint are best interpreted as alleging this set of claims. However, in recognition of the special solicitude afforded to pro se litigants, the Court clarifies

the doctrinal basis and appropriate defendants for some of Plaintiff's claims.

### A. Due Process and Equal Protection

Plaintiff alleges that he was assigned a "Green ID, ICR card" while at G.R.V.C. without proper procedure or an opportunity to contest that designation. He adds that the defendants associated with the claim—Agro, Lemon, Fraizer, Garcia, Harris, and Schriro—acted in specific disregard of standard disciplinary procedures. He argues that these defendants thereby violated his due process and equal protection rights. Neither claim succeeds.

To establish a due process claim with respect to a prison disciplinary proceeding, "a plaintiff must establish (1) possession of a liberty interest and (2) deprivation by defendants of that interest as a result of insufficient process." *Dawkins v. Gonyea,* 646 F.Supp.2d 594, 605 (S.D.N.Y.2009). "Prison discipline [does] implicate[ ] a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). However, "[t]he Supreme Court has stated ... that prisoners do not have a liberty interest under the Federal Constitution in 'prisoner classifications and eligibility for rehabilitative programs in the federal system.' " *Green v. Armstrong,* 189 F.3d 460, 460 (2d Cir.1999) (quoting *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)). As Judge Castel has explained:

> **\*6** In assessing whether a prison facility has afforded its inmates adequate procedural due process, courts acknowledge that prison administrators have wide discretion to adopt and execute policies and procedures that are in the best interest of the institution. Regarding classification procedures, prison officials have "full discretion" to control conditions of confinement, which include prisoner classification, and prisoners have no legitimate statutory or constitutional entitlement sufficient to invoke due process in connection with such conditions. Consequently,

2013 WL 1234930

prisoners have no liberty interest that protects them from security classification or mis-classification.

*Walker v. City of New York,* No. 11 Civ. 9611, 2012 WL 3037308, at *2 (S.D.N.Y. July 25, 2012) (quotation marks and citations omitted); *see also Taylor v. New York Dept. of Corr.,* No. 10 Civ. 3819, 2012 WL 2469856, at *3 (S.D.N.Y. June 27, 2012). Because Plaintiff has failed to identify a liberty interest protected by the Due Process Clause, his claim cannot succeed.

Plaintiff's equal protection claim also fails. The Second Circuit has explained that:

> To state a claim for an equal protection violation, appellants must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender. Such intentional discrimination can be demonstrated in several ways. First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. Lastly, a facially neutral statute violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect.

*Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir.1999) (citations omitted). Here, Plaintiff does not allege that he was mistreated or treated differently than his colleagues on the basis of a protected classification. He does not identify any law or policy as the source of the alleged violation, nor does he adequately allege discriminatory enforcement of any law or policy. Thus, Plaintiff cannot prevail as a matter of law on any equal protection claim.

**B. Retaliation and Access to Courts**

Plaintiff alleges three distinct claims styled as "retaliation": the first claim focuses on actions by Bacote, Morris, Daly, Garcia, Lemon, Harris, and Williams against Plaintiff motivated by Plaintiff's filing of a civil complaint and numerous grievances; the second claim concerns actions taken by Williams and Letizia as punishment for Plaintiff's prior civil case before Judge Pauley; and the third claim focuses on actions taken by Bacote in response to Plaintiff's decision to file this civil action. [2] The Court interprets Plaintiff's Complaint to raise claims under the First Amendment for retaliation and under the constitutional right of access to courts.

**1. First Amendment Retaliation**

**\*7** "[O]therwise constitutional acts may be actionable if taken in retaliation for the exercise of First Amendment rights." *Soto v. Iacavino,* No. 01 Civ. 5850, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003). To survive dismissal, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d. Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

It is well established that "a prisoner's filing of both lawsuits and administrative grievances is constitutionally protected ." *Collins v. Goord,* 438 F.Supp.2d 399, 419 (S.D.N.Y.2006) (citations omitted). In other words, "[s]ince access to the courts is an established constitutional right," *Smith v. City of New York,* No. 03 Civ. 7576, 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (citing *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)), speech undertaken for the purpose of accessing courts—extending from civil litigation to the administrative grievances ordinarily prerequisite to civil litigation under the Prison Litigation Reform Act—is "protected" for purposes of First Amendment retaliation analysis.

The adverse action inquiry is "objective" and is "tailored to the different circumstances in which retaliation claims arise." *Dawes,* 239 F.3d at 493 (citation omitted). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes,* 239 F.3d at 493 (citations omitted). "Otherwise, the retaliatory act is simply *de*

*minimis* and therefore outside the ambit of constitutional protection." *Id.* (citing *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (per curiam)); *see also id.* ("Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." (citation omitted)). Thus, "[u]nder some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered ... [but] vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim." *Bumpus v. Canfield,* 495 F.Supp.2d 316, 326 (W.D.N.Y.2007).

Courts also recognize a doctrine of retaliatory transfer. As Judge Swain has explained:

> Prisoners normally have no constitutional right to remain in any particular state prison facility, absent a state statute or policy conditioning transfers on proof of specific acts of misconduct. Prison officials thus have broad discretion in making transfer determinations. They may not, however, transfer [prisoners] solely in retaliation for the exercise of constitutional rights. Where, as here, an adverse action (such as a transfer) is challenged as retaliatory in violation of the First and Fourteenth Amendments, the plaintiff has the burden in the first instance of demonstrating that the underlying conduct that precipitated the adverse action was constitutionally protected and that said conduct was a substantial or motivating factor in the defendant's subsequent adverse conduct. If the plaintiff meets that burden, the defendants have the opportunity to demonstrate by a preponderance of the evidence that they would have reached the same decision even in the absence of the protected conduct.

**\*8** *Salahuddin v. Perez,* No. 99 Civ. 10431, 2006 WL 266574, at \*5 (S.D.N.Y. Feb.2, 2006) (quotation marks and internal citations omitted).

The third and final requirement of a retaliation claim is a causal connection between the protected speech and adverse action. *Dawes,* 239 F.3d at 492. "The causal connection must be sufficient to support the inference 'that the speech played a substantial part in the employer's adverse employment action.' " *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000) (quoting *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 780 (2d Cir.1991)). A combination of direct and circumstantial evidence can support such an inference. *Smith,* 2005 WL 1026551, \*4. Even at the motion to dismiss stage, "the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred." *Crenshaw v. Hartman,* 681 F.Supp.2d 412, 416 (W.D.N.Y.2010) (quotation marks and citations omitted). In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, courts may consider "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citation omitted).

"[P]rison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (citation omitted). Accordingly, courts approach First Amendment retaliation claims brought by inmates "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491.

Here, Plaintiff alleges several different retaliation claims. The Court addresses each in turn, granting in part and denying in part Defendants' motion to dismiss.

First, Plaintiff alleges that Letizia retaliated against him for his prior civil suit before Judge Pauley. Specifically,

he alleges that Letizia mocked Plaintiff's wife with the promise that "we will take care of [Plaintiff]." Plaintiff adds that "I know this comment [referred] to the treatment plaintiff was receiving in retaliation for the suit in 2008, in which defendant Williams was a defendant with [several] of his colleagues also." This claim fails even at the motion to dismiss stage because Plaintiff has inadequately pleaded a connection between the protected activity (his civil suit) and the adverse action (threatening Plaintiff while on the phone with Plaintiff's wife). This critical element is merely asserted, but none of the facts contained in the Complaint adequately support it. *See Crenshaw,* 681 F.Supp.2d at 416. Further, even if the claim did not fail on this ground, the Court would still dismiss it due to the requirement of an adverse action that rises above the threshold of a vague verbal threat. *See Bumpus,* 495 F.Supp.2d at 326 ("[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim.").

**\*9** Second, Plaintiff alleges that Garcia retaliated against him for his prior civil suit before Judge Pauley. The protected activity here is Plaintiff's prior civil suit. The adverse action is denial of supportive footwear notwithstanding a medical permit. As the Court explains below, this constitutes an independent constitutional violation—but that does not preclude it from doing double—duty as the adverse action prerequisite to a finding of First Amendment retaliation. Denial of medical care that could address "extreme pain" surely qualifies as an action "that would deter a similarly situated individual of ordinary fitness from exercising his or her constitutional rights." *Dawes,* 239 F.3d at 493. The causal connection is based on Plaintiff's recollection that Garcia "stated that he was notified by an officer in the 3 building (GMDC) and 5 building (AMKC) that you were back in the system ... and that you [were] involved in something back in 2006, (a settled suit with Honorable William H. Pauley[ ] ), and for us to put you on ICR status. Defendant Garcia stated that plaintiff pissed someone off, so, I can't help you." Plaintiff has adequately alleged the factual predicate of a causal connection between the protected activity and the adverse action. This claim therefore survives Defendants' motion to dismiss.

Third, Plaintiff alleges that Lemon engineered a retaliatory transfer. The protected activity for this claim is Plaintiff's filing of a grievance against Lemon for denial of medical care. The adverse action is the transfer of Plaintiff at Lemon's instigation to C–95—a facility that Plaintiff immediately recognized as a dangerous location, as evidenced by his objections to Carter that "I could not go to C–95." Plaintiff explains that C–95 was "the same facility that defendant Lemon threaten[ed] to send plaintiff if he don't leave it alone (obtaining his supportive footwear) even though defendant Lemon knew that a few officers tried to have physical injury done to plaintiff." The causal connection is based on this explicit threat by Lemon, coupled with the fact that Plaintiff filed a grievance against Lemon (thereby not "leav[ing] it alone") and the fact that Lemon "told plaintiff that his underlings will be dealing with me." Applying the standard that Judge Swain articulated in *Salahuddin,* which includes the proviso that prison officials may not transfer prisoners "solely in retaliation for the exercise of constitutional rights," 2006 WL 266574, at \*5 (citations omitted), the Court concludes that Plaintiff's claim of retaliatory transfer survives this motion to dismiss.

Fourth, Plaintiff alleges that Williams locked him in an intake area without food, water, showers, linens, running water, or a bathroom as retaliation for Plaintiff's 2008 civil case against Williams. The protected activity is Plaintiff's prior civil case. The adverse action is Williams' decision to confine Plaintiff to an intake area without basic necessities for two days. The causal connection is based on Williams' statement that "I know who the fuck you are, you got a lot of balls coming to this building!" This claim survives Defendants' motion to dismiss.

**\*10** Finally, Plaintiff alleges that Becote, Morris, and Daly threatened him in several ways on and after March 28, 2012, and that Bacote gave Plaintiff a ticket without any other justification that resulted in Plaintiff being punished for 40 days. The protected activity is Plaintiff's decision to litigate this case. The adverse actions consist of verbal and physical threats and a handcuffing by Becote, Morris, and Daly, as well as the forty days of punishment that resulted from Becote's trumped-up charges. The causal connection is based on the facts that Daly learned of this case and told Plaintiff that Daly had "something" for Plaintiff upstairs, that Becote reviewed the initial complaint in this case after Plaintiff complained of Daly's threat, and that Daly and Becote (joined by Morris) commenced their allegedly adverse actions almost immediately afterwards. A retaliation claim based on the threats and handcuffing described by Plaintiff cannot succeed because these actions do not rise to the level of

severity prerequisite to a finding of adverse action. Thus, the retaliation claim against Daly, Morris, and Becote based on their threats and handcuffing must be dismissed. However, forty days of punishment for a charge fabricated to punish an inmate for filing a civil lawsuit does qualify as an adverse action under retaliation doctrine. [3] Given that Plaintiff also described facts that support a finding of causal connection, Defendants' motion to dismiss the retaliation claim against Becote arising from the ticketing incident is denied.

In sum, Plaintiff's retaliation claims against Garcia, Lemon, Williams, and Becote survive this motion to dismiss. All other retaliation claims are dismissed.

### 2. Access to Courts

"It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir.1997) (collecting cases). "The right of access to courts extends beyond mere physical access to a courtroom and a judge." *Id.* "Prisoners must have a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Smith,* 2005 WL 1026551, at *6 (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). Thus, the active interference of prison officials in the preparation, filing, or exchange of legal documents may constitute denial of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

"In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.,* took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Monsky,* 127 F.3d at 247 (quotation marks and citations omitted). "Interference with legal mail implicates a prison inmate's rights to access to the courts ... [t]o state a claim for denial of access to the courts—in this case due to interference with legal mail—a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (quotation marks and citations omitted); *see also id.* ("In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment.") (citations omitted)). Accordingly, "[i]n balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.* (collecting cases).

**\*11** "To state a valid § 1983 claim that he has been denied reasonable access to the courts, [an inmate] must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action." *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995); *see also Davis,* 320 F.3d at 352 ("[Plaintiff] fails to state a constitutional claim for violating his right to send and receive legal mail because he alleges neither the establishment of an ongoing practice by prison officials of interfering with his mail nor any harm suffered by him from the tampering."). "A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen,* 877 F.Supp. at 871. "In other words the plaintiff must show that a non-frivolous legal claim had been frustrated or was being impeded due to the actions of prison officials." *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citations omitted); *see also Smith,* 2005 WL 1026551, at *6; *Bartley v. Artuz,* No. 95 Civ. 10161, 1999 WL 942425, at *9 (S.D.N.Y. Oct.19, 1999).

Plaintiff alleges at multiple points that certain defendants interfered with his mail, including his legal mail, and took action against him in retaliation for his grievances and civil lawsuits (including this suit). [4] Most of Plaintiff's legal claims arising from this course of events are covered by First Amendment retaliation doctrine. Regardless, because Plaintiff has not alleged facts that reveal a substantial delay or interruption in his ability to communicate with the Court, and has not alleged facts that could support a finding that he has been prejudiced or impeded in his legal actions, Defendants' motion to dismiss must be granted as to any access to court claim suggested by the Complaint. *See Cancel,* 2001 WL 303713, at *4.

2013 WL 1234930

## C. Eighth Amendment

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. That rule, applicable to the states through the Fourteenth Amendment, *see Estelle v. Gamble,* 429 U.S. 97, 101–02, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), is violated by unnecessary and wanton inflictions of pain and suffering, *see Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

Plaintiff alleges Eighth Amendment violations under two distinct theories: inadequate medical treatment and unconstitutional conditions of confinement.[5] In 1976, the Supreme Court explained that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment ... whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05 (quotation marks and internal citations omitted). The Court has since clarified that "we see no significant distinction between claims alleging inadequate medical care and those alleging inadequate conditions of confinement .... Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard articulated in *Estelle." Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quotation marks and citations omitted).

**\*12** To state an Eighth Amendment claim, a prisoner must allege both (1) that he suffered a sufficiently, objectively serious deprivation and (2) that officials who caused the harm acted or failed to act with a sufficiently culpable state of mind, *i.e.,* with deliberate indifference to inmate health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The objective prong of this analysis requires an assessment of the allegedly cruel and unusual conditions. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). However, prisoners may not be deprived of "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.' " *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (quoting *Helling,* 509 U.S. at 35). "Ultimately, to establish the objective element of an Eight Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Id.* (citations omitted); *see also Carr v. Canty,* No. 10 Civ. 3829, 2012 WL 3578742, at *3 (S.D.N.Y. Aug.16, 2012) ("[T]o establish the deprivation of a basic human need such as reasonable safety, an inmate must show actual or imminent harm." (quotation marks and citations omitted)).

"To establish the second element, deliberate indifference, a plaintiff must show something more than mere negligence ...." *Id.* (internal quotation marks and citation omitted). An official cannot be found liable on a conditions of confinement theory "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. The Second Circuit has noted that "[t]his deliberate indifference element is equivalent to the familiar standard of recklessness as used in criminal law." *Phelps v. Kapnolas,* 308 F.3d at 186 (quotation marks omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842.

Plaintiff's conditions of confinement claims against Williams and Bacote for confining him in intake areas do not succeed. Plaintiff's claim against Williams is based on the fact that Plaintiff was confined to an intake bullpen for two days and denied access to food, shower, linens, running water, and a bathroom. Plaintiff's claim against Bacote is based on the fact that, on the 5–7 occasions that Plaintiff was moved out of V.C.B.C. at Becote's command, Plaintiff was forced to sleep in an intake area with "a constant air-condition system" that blew "extreme cold

air" onto Plaintiff, who lacked blankets, sheets, running water, and a toilet.

**\*13** Addressed individually, none of these conditions suffices to state an Eighth Amendment violation. It is well established that deprivation of food, *see Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983), denial of toilet paper and toiletries, *see Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003), exposure to the bitter cold, *see Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001), exposure to the cold without bed linens, *see Maguire v. Coughlin,* 901 F.Supp. 101, 105 (N.D.N.Y.1995), and confinement in a cell without a toilet, *see LaReau v. MacDougall,* 473 F.2d 974, 977 (2d Cir.1972), can result in an Eighth Amendment violation when severe enough or sustained over a long enough period of time. Moreover,

> *[s]ome* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets.

*Wilson,* 501 U.S. at 304 (citations omitted). In this case, however, the Court cannot conclude that the deprivations that Plaintiff experienced rise to the level of cruel and unusual punishment. This determination hinges largely on the fact that none of Plaintiff's confinements in the intake areas lasted more than two days. Given that none of these deprivations rose to an acute and conscience-shocking level, either alone or in combination, the relative brevity of Plaintiff's mistreatment precludes a finding that Plaintiff can satisfy the requirement of an objectively serious deprivation.

The Court reaches a different conclusion, however, with respect to Plaintiff's claim based on denial of medical care. At this early stage in the case, drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged a serious medical need.

It is well established that not every claim made by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment; neither negligence nor medical malpractice is sufficient. *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003). To the contrary, a plaintiff must show conduct that is "repugnant to the conscience" or "incompatible with the evolving

standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102, 105 (citations omitted). [6]

Defendants cite a number of cases that have rejected Eighth Amendment claims based on denial of footwear. Most of these cases are off-point or address the issue only with stray lines of *obiter dictum.* While the Court agrees that the legal principles articulated by these cases would defeat a conditions of confinement claim in this case based on shoddy footwear, it parts ways from Defendants on the significance of these cases for Plaintiff's denial of medical care claim. [7] Although these claims are analyzed under the same doctrinal framework, the presence of a medical treatment issue calls upon the Court to assess with particularity the nature and quality of the medical deprivation that Plaintiff endured. As the Second Circuit has explained,

**\*14** if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain.

*Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citations omitted). While this standard most certainly includes "condition[s] of urgency that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (citation omitted), it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain." *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003). Thus, courts "will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain." *Id.* Accordingly, when presented with denial of medical treatment claims, courts do not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *See id.* (disagreeing with district court determination that chronic pain somewhere between 'annoying' and 'extreme' could not suffice to support

a denial of treatment violation under the Eighth Amendment).

Here, Plaintiff states that he experienced months of "extreme pain," including intense pain in his feet, severely swollen ankles, and chronic bouts of lower back pain, as the direct result of Defendants' allegedly malicious refusal to allow him access to supportive footwear. These symptoms, he reports, resulted in a visit to the hospital to examine his swollen ankles and difficulties engaging in certain prerequisites to prison life, such as "playing the wall" and kneeling on the ground during a search. Significantly, this situation persisted despite several recommendations from prison physicians that Plaintiff be allowed to wear supportive footwear, despite official permits from these physicians, and despite the fact that Plaintiff was prescribed painkillers to deal with the pain that resulted from non-treatment. Plaintiff is thus differently situated than the plaintiffs in other cases that lacked medical advice and medical prescriptions. [8]

While "[i]t is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage," *Chance,* 143 F.3d at 702–03 (citations omitted), the Court concludes that this claim must survive Defendants' motion to dismiss. Plaintiff has described a form of near-chronic suffering that, by his own account, far exceeds the threshold of merely annoying and rises to the level of extreme pain. *Brock,* 315 F.3d at 163. Notably, physicians found this condition "worthy of comment" and treatment—namely, prescription painkillers and medical permits—and Plaintiff has explained that this condition "significantly affects [his] daily activities." *See Salahuddin,* 467 F.3d at 280. While this case is in some respects a close one, the Court cannot conclude as a matter of law that Plaintiff's injuries fall below the relevant threshold of objective severity for purposes of an Eighth Amendment denial of medical treatment claim. The settled fact that "the Constitution does not mandate comfortable prisons," *Rhodes,* 452 U.S. at 349, simply does not mean that the Eighth Amendment abides the wanton infliction of months of "extreme" pain through the allegedly arbitrary denial of medically authorized footwear by prison guards. Recalling that "[m]obility is fundamental to our continued health," the Court concludes that "discovery could shed light on whether Plaintiff's medical need was of such seriousness and

urgency that the failure to address it ... amounted to a violation of Plaintiff's constitutional rights." *Giambalvo v. Sommer,* No. 10 Civ. 6774, 2012 WL 4471532, at *5 (S.D.N.Y. Sept.19, 2012). [9]

**\*15** Because Defendants have not moved to dismiss these claims on any ground other than Plaintiff's supposed failure to demonstrate a sufficiently serious deprivation, the Court does not examine whether Plaintiff satisfies the other requirements of a denial of medical treatment claim (including the requirement of a culpable mental state on Defendants' part).

In the Complaint, Plaintiff identifies Schriro, Agro, Lemon, Fraizer, Williams, Best, Smith, Garcia, Washington, Lespinasse, Hart, Hines, Anku, and Moultrie as the defendants associated with the deliberate indifference claim. Because the Complaint was filed by a *pro se* litigant, it must be interpreted to raise the strongest claims it suggests against the set of named defendants. The Court has independently examined the Complaint and concludes that Plaintiff's Eighth Amendment claim is alleged against Hart, Lespinasse, Washington, Lemon, Fraizer, Best, Williams, Harris, Garcia, Moultrie, Smith, and Hines. For the reason set forth *infra,* Plaintiff's claims against Schriro and Agro are dismissed for failure adequately to allege their supervisory liability. Further, Plaintiff's allegations against Aknu involve only conditions of confinement; to wit, being required to kneel uncomfortably for 30–45 minutes during a search. Because the Complaint does not allege that Aknu participated in the denial of Plaintiff's request for medical treatment, the Eighth Amendment claim against him must be dismissed.

### D. Claims Against Defendants Schriro and Agro

"It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *McCoy v. Goord,* 255 F.Supp.2d 233, 258 (S.D.N.Y.2003) (quotation marks and citations omitted). Under § 1983, supervisory liability "depends on a showing of some personal responsibility, and cannot rest on *respondeat superior." Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989)). "[P]roof of 'linkage in the prison chain of command' is

insufficient." *Id.* (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). "Absent some personal involvement by [an official] in the allegedly unlawful conduct of his subordinates," he cannot be liable under section 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987); *see also Hernandez,* 341 F.3d at 145 (specifying some of the forms of involvement that would support supervisory liability). A defendant's status as warden or commissioner of a prison, standing alone, is thus insufficient to support a finding of supervisory liability. *See Collins,* 438 F.Supp.2d at 420. Further, merely "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca,* No. 01 Civ. 5178, 2007 WL 162476, at *10 (S.D.N.Y. Jan.19, 2007). "Broad, conclusory allegations that a high-ranking defendant was informed of an incident are also insufficient." *Gonzalez v. Sarreck,* No. 08 Civ. 3661, 2011 WL 5051341, at *14 (S.D.N.Y. Oct.24, 2011) (citation omitted).

**\*16** Applying these rules, the Court concludes that Plaintiff has not alleged facts that could support a finding of supervisory liability against Agro and Schriro. All claims against these defendants are therefore dismissed.

### E. Claims Against Barker
Plaintiff alleges that Barker violated the Eighth Amendment by virtue of deliberate indifference to the public's medical needs and that Barker should be held liable under the tort law doctrine of products liability for defective design and failure to warn. These claims do not succeed. As a provider of shoes to the prison, Barker could not plausibly be described as one of the officials acting under color of law "who caused the harm" or did so with the requisite state of mind—namely, deliberate indifference. *See Farmer,* 511 U.S. at 834. This defeats any Eighth Amendment claim against him. Plaintiff has not alleged and this Court cannot imagine any other claim

under § 1983 against Barker. Thus, there is no federal claim in this case against Barker.

Absent such a federal claim, this Court could only consider a state law products liability claim against Baker as a matter of supplemental jurisdiction. Given the early stage of this litigation and the markedly distinct nature of the state law claims as compared to Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the varied products liability claims alleged in the Complaint. *See Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 102–03 (2d Cir.1998) (noting that "when all federal claims are eliminated in the early stages of the litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice").

All claims against Barker are therefore dismissed.

### IV. Summary of Remaining Claims
All claims in this case are dismissed except for First Amendment retaliation claims against Garcia, Lemon, Williams, and Becote, and Eighth Amendment denial of medical treatment claims against Hart, Lespinasse, Washington, Lemon, Fraizer, Best, Williams, Harris, Garcia, Moultre, Smith, and Hines.

### V. Conclusion
For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Clerk of Court is directed to close the motion at Dkt. No. 32.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1234930

Footnotes

1    Plaintiff filed his original complaint on December 16, 2011. He filed an amended complaint on June 6, 2012. Defendants filed a motion to dismiss the amended complaint on August 30, 2012. On November 20, 2012, the Court informed Plaintiff that he had until December 7, 2012 to file opposition papers. The Court added that Plaintiff "may also file on that date his proposed second amended complaint, to which defendants may respond in their reply brief." In their reply brief, Defendants have asked the Court to reject Plaintiff's proposed second amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave" to amend the complaint "when justice so requires." The principal reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant,

2013 WL 1234930

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Here, there is no evidence of undue delay, bad faith, prejudice, or repeated failure to cure deficiencies. The futility of amendment is a question best addressed by actually deciding the pending motion to dismiss. Recognizing that the Court indicated that Plaintiff could file a proposed second amended complaint, and that the pleadings filed by *pro se* litigants merit "special solicitude," *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994), the Court therefore accepts Plaintiff's Second Amended Complaint ("the Complaint") as the operative pleading in the case.

2    Plaintiff's prior case before Judge Pauley is denoted 1:08–cv–00284–WHP on ECF.

3    Defendants argue that Plaintiff should be required specifically to allege that he did not engage in the behavior charged by the ticket. In the Second Amended Complaint, however, Plaintiff plainly states that "Up until that point plaintiff have not had one single problem that would warrant a misbehavior report, nor have plaintiff ever refused to lock-in." He adds that "both charges [were] fabricated by defendant Bacote." These facts, taken as true for purposes of this motion, negate Defendants' argument.

4    Plaintiff's opposition to the motion to dismiss the First Amended Complaint contains additional facts of this sort, some of which are addressed by Defendants in their filings. Those allegations are not considered in this opinion, which addresses only the now-operative Second Amended Complaint and Defendants' motion to dismiss.

5    The Complaint also suggests an instance of tight handcuffing by Daly while Morris ordered Plaintiff to "play the wall" after Plaintiff's visit to the medical clinic. To the extent that Plaintiff alleges an Eighth Amendment excessive force claim based on this incident, that claim does not succeed on these facts. As this Court has noted:

> [S]ome degree of injury is ordinarily required to state a claim of excessive use of force in violation of the Eighth Amendment. A plaintiff need not prove significant injury to make out an excessive force claim, but a *de minimis* use of force will rarely suffice to state a constitutional claim. *De minimis* force, even if clearly unpleasant to endure, does not violate the Eighth Amendment where the use of force is not of a sort repugnant to the conscience of mankind.

> *Taylor v. New York Dept. of Corr.,* No. 10 Civ. 3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012); *see also id.* at *3–5 (discussing Eighth Amendment excessive force doctrine). Here, Plaintiff does not allege any serious injury, nor does he allege that he protested that the handcuffs were too tight or that the officers acted abusively. *Cf. Sachs v. Cantwell,* No. 10 Civ. 1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012) (discussing the legal standard for excessive force claims under the Fourth Amendment for claims based on tight handcuffing).

6    Moreover, inmates are not entitled to the medical treatment of their choice. *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ( "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (citation omitted)); *see also Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986).

7    Nearly all of the cases cited by Defendants either address this point in brief dicta or discuss only a conditions of confinement claim where the plaintiff lacked a medical condition, medically advised footwear, or prescription medication. In *Edwards v. Quinones,* Judge Pauley held that a plaintiff could not satisfy the deliberate indifference element—and then added in a single sentence of dicta that the plaintiff, who had not alleged such facts as medical need, prescribed painkillers, or extreme pain, "[bore] the hallmarks of a recreational litigant." No. 10 Civ 314 1, 2010 WL 4669110, at * 1, *3 (S.D.N.Y. Nov.17, 2010). *Walker v. Clemson,* presented by Defendants as their principal case, similarly misses the mark. No. 11 Civ. 9623, 2012 WL 2335865 (S.D.N.Y. June 20, 2012) *report and recommendation adopted,* No. 11 Civ. 9623, 2012 WL 3714449 (S.D.N.Y. Aug.28, 2012). In *Walker,* the plaintiff was denied use of personal sneakers even after a doctor recommended that he be provided with supportive footwear to remedy a foot spur; this injury, coupled with the prison-issued sneakers, caused the plaintiff "to suffer pain, chronic fungus, [and] a painful gait which in turn warranted the use of a cane to correct" and resulted in a possible need for surgery. *Id.* at * 1. Magistrate Judge Cott recommended denial of a conditions of confinement claim based on deprivation of basic human needs, noting that "[w]hile the prison-issued footwear may not have been as supportive as [the plaintiff's] personal sneakers, the Constitution does not require that prisons provide high-quality footwear." *Id .* at *4. However, when Judge Cott turned to the plaintiff's separate claim of inadequate medical care, he concluded that an absence of information about "how much time passed from [ ] the date Walker was seen by the facility doctor, to the date his personal sneakers were returned to him" prevented any "determination from the pleadings as to the particular risk of harm faced by Walker due to the alleged deprivation." *Id.* at *6. Judge Cott nonetheless recommended denial of the plaintiff's claim due to failure to satisfy the deliberate indifference requirement. *Id.* Several of Defendants' other citations fare little better because Defendants rely on cases that deal with ordinary conditions of confinement claims, not denial of medical care claims. *See, e.g., Martin v. City of New York,* No. 11 Civ. 600, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) (finding no Eighth Amendment violation where inmate slipped

2013 WL 1234930

and fell on a wet shower floor while wearing poorly constructed shoes); *Williams v. Dep't of Corr.,* No. 11 Civ. 1515, 2011 WL 3962596, at *4 (S.D.N.Y. Sept.7, 2011) (denying conditions of confinement claim where poorly constructed shoes caused slip and falls, and pain in inmate's calves and feet).

8    Further, unlike cases where courts addressed somewhat analogous facts with the precision made possible by fully developed factual records, this Court can rely only on the pleadings. *Cf. Cole v. Scully,* No. 93 Civ.2066, 1995 WL 231250, at *3 (S.D.N.Y. Apr.18, 1995)

9    Defendants argue that this claim must be dismissed on the basis of a single Inmate Grievance Form (IGF) from October 12, 2011, which Defendants argue is incorporated into the Complaint by reference. Even assuming that this IGF is, in fact, incorporated by reference, it would not constitute a basis to dismiss the Complaint. This form states that, as a resolution of Plaintiff's grievance, "the [Inmate Grievance Resolution Committee] was informed that if your medical note is current, you are advised to bring your medical note to the clothes box and you will be issued supportive footwear." The IGF indicates that Plaintiff refused to sign. Nothing about this document plainly contradicts Plaintiff's own account of events. It is entirely possible that the Committee took that permissive position in response to his grievance, but that Defendants nonetheless maliciously and willfully disregarded that instruction from the Committee. The fact that Plaintiff refused to sign the form says little on its own; it certainly does not contradict Plaintiff's allegations that Defendants denied him access to his supportive footwear notwithstanding a medical permit, nor does it prove that Plaintiff actually received supportive footwear.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Ariel PAULINO, Plaintiff,
v.
Brian FISCHER, Capt. Knapp; Investigator Nunez;
Patricia Laconey, Defendants.

No. 9:12–CV–00076 (TJM/TWD).
Sept. 16, 2013.

Ariel Paulino, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Laura A. Sprague, Esq., of Counsel, Albany, NY, for Defendant.

***DECISION and ORDER***
THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S .C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In her June 14, 2013 Report–Recommendation (Dkt. No. 26), Magistrate Judge Dancks recommends that Defendants' motion to dismiss (Dkt. No. 22) be granted in part and denied in part. No objections to the Report–Recommendation and Order have been filed, and the time to do so has expired.[FN1]

> FN1. The Docket indicates that the Report–Recommendation and Order was served on Plaintiff at his Bare Hill Correctional Facility address but was returned as "undeliverable" with a notation on the envelope that reads "NOT HERE RETURN TO SENDER, ME 3/1". In the interim between service and return, Plaintiff provided a notice of change of address indicating that he had been released from in-

carceration. On July 5, 2013, the Clerk's Office re-served the Report–Recommendation and Order on Plaintiff by mailing it to his newly reported address. No objections have been received from Plaintiff.

**II. DISCUSSION**

After examining the record, this Court has determined that the Report–Recommendation and Order is not subject to attack for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ADOPTS** the Report–Recommendation and Order for the reasons stated therein. Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 22) is GRANTED in part and DENIED in part as follows:

(1) Defendants' motion to dismiss Plaintiff's claim for money damages against Defendants in their official capacities on Eleventh Amendment grounds is GRANTED as to all Defendants, including the non-moving Doe Defendants; and

(2) Defendants' motion to dismiss Plaintiff's Amended Complaint in its entirety under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) is DENIED ***provided*** Plaintiff advise the Court in writing, within thirty (30) days of the date of this Decision and Order, that he waives for all time all claims in this action relating to disciplinary sanctions that affected the duration of his confinement. This waiver will allow Plaintiff to proceed with his claim challenging the disciplinary sanctions affecting the conditions of his confinement. Plaintiff's failure to file the required waiver statement within thirty (30) days will be considered as his refusal to waive the duration of confinement claim, and such failure will result in dismissal of this action without prejudice without further order by the Court; and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

(3) Defendants' motion to dismiss Plaintiff's claim for emotional and mental distress is DENIED.

### IT IS SO ORDERED.

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This *pro se* civil rights action, commenced pursuant to 42 U.S .C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff Ariel Paulino was formerly an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[FN1] Plaintiff has sued Defendants Brian Fischer ("Fischer"), DOCCS Commissioner; Capt. Knapp ("Knapp"), hearing officer in Plaintiff's disciplinary proceeding at Cape Vincent Correctional Facility ("Cape Vincent"); Investigator Nunez ("Nunez"), of the Inspector Generals Office; and Patricia LaConey ("LaConey"), Superintendent at Cape Vincent.[FN2] (Dkt. No. 10.)

> FN1. The Docket maintained by the Clerk's Office indicates that the NYS DOCCS lookup reflects that Plaintiff was released from incarceration on his maximum expiration date of March 1, 2013. (*See* March 18, 2013 Docket notation.) Plaintiff has failed to provide the Clerk's Office with his current address.

> FN2. Plaintiff has included four John Doe defendants in his Amended Complaint. (See Dkt. No. 10 at 3.) The action was dismissed for failure to state a claim as against John Doe # 1 by Judge McAvoy in his initial review of Plaintiff's Amended Complaint pursuant to 28 U .S.C. §§ 1915(e)(2)(B) and 1915A(b). (Dkt. No. 12 at 8.) It appears from the Docket maintained by the Clerk's Office in this matter that none of the remaining Doe Defendants

have been identified or served and none are parties to the motion to dismiss now before me.

**\*2** Plaintiff's claims arise out of the issuance of an allegedly false misbehavior report against him for smuggling and possession of drugs, and for the alleged denial of his due process rights in connection with the disciplinary hearing held on the charges. *Id.* Defendants have been sued in both their individual and official capacities. *Id.* at 11. Plaintiff seeks money damages as well as injunctive and declaratory relief. *Id.*

Defendants Fischer, Knapp, Nunez, and LaConey have moved for dismissal of Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN3] (Dkt. No. 22.) Plaintiff has opposed the motion. (Dkt. No. 24.) For reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

> FN3. Although not included in their notice of motion, Defendants also seek a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure barring discovery pending the resolution of this matter. (Dkt. No. 22–1 at 9.)

### I. BACKGROUND[FN4]

> FN4. The background facts are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this motion. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (on a Rule 12(b)(6) motion, all factual allegations in the complaint are to be deemed true).

On July 25, 2011, while Plaintiff was confined as an inmate at Cape Vincent, he was visited by a woman he has described as his common law wife. (Dkt. No. 10 at ¶ 3.) During the visit, a corrections sergeant, accompanied by two other officers, approached Plaintiff and his common law wife and in-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

structed Plaintiff to sit down at a table. *Id.* at ¶ 4. Plaintiff's common law wife was forcibly seized and escorted out of the visiting area by the corrections sergeant and the other two officers. *Id.* at ¶¶ 4–5. Plaintiff did not see her again during the visit. *Id.* at ¶ 6.

Fifteen or twenty minutes later, the corrections sergeant and two other officers took Plaintiff to the Special Housing Unit ("SHU") where he was required to go to the bathroom in a pail so that his feces could be tested for drugs. *Id.* at ¶ 7. The day after being placed in SHU, Plaintiff was given a drug test which came back negative. *Id.* at ¶ 8. A day or two later, Plaintiff was given a letter indicating that his common law wife had been arrested for marijuana possession. The following day Plaintiff, who until that time had been told nothing about why he had been administratively segregated, was given a misbehavior report charging him with smuggling, possession of drugs, and conspiracy. *Id.* at ¶¶ 9–10. At his disciplinary hearing two days later, Plaintiff was informed that the misbehavior report came from the Inspector Generals Office, and Cape Vincent officials would have to wait until they received the supporting evidence to go forward with his hearing. *Id.* ¶ 11. Plaintiff objected to the delay. *Id.* at 11.

Plaintiff eventually learned that his common law wife had told authorities that the drugs belonged to Plaintiff, and he had asked her to bring them to Cape Vincent. *Id.* at ¶ 7 Plaintiff also learned that the Inspector Generals Office had been routinely taping his phone calls without allowing Plaintiff to see a warrant. *Id.* at ¶ 7 and 11. Plaintiff, who denied the allegations in the misbehavior report, claims that he was not allowed to confront his accusers. *Id.* at ¶ 13. When Plaintiff spoke to his common law wife by telephone, she told him that she had never said he "had knowledge of, paid, solicited, importune (repeated request) of her possession of drugs, nor at any time did she request him to take drugs from her." *Id.* at ¶ 14.

**\*3** Plaintiff claims to have had no assistant at

his disciplinary hearing and to have been unable to utilize a compulsory process to obtain witnesses because he was in SITU. *Id.* at ¶ 15. Plaintiff was not allowed to cross-examine the informant who had implicated Plaintiff and his common law wife. Nor was Plaintiff allowed to fully cross-examine his common law wife, who testified that Corrections had tried to threaten, coerce, and intimidate her to implicate Plaintiff as soliciting her to smuggle narcotics. *Id* . at 9. In addition, Plaintiff did not get all of the witnesses he wanted or a videotape of the visiting area. *Id.*

The hearing officer imposed a penalty of eighteen months in SITU on Plaintiff. *Id.* at ¶ 17. The penalty was reduced to twelve months on appeal. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in January of 2012 against Defendants Fischer; Deputy Commissioner of DOCCS; Knapp; John Doe # 1, later identified and replaced in the caption by LaConey (*see* Dkt. No. 12 at 9); Sgt. John Doe # 2; John Doe # 3; and Nunez. (Dkt. No. 1.) In a May 14, 2012, Decision and Order, Judge McAvoy granted Plaintiff's request to proceed *in forma pauperis.* (Dkt. No. 7 at 2.)

Upon initial review of Plaintiff's original Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Judge McAvoy found that Plaintiff's Complaint, liberally construed, could be found to assert the following claims: (1) deliberate indifference to the wrongdoing of DOCCS employees by Fischer and the Deputy Commissioner of DOCCS; (2) issuance of a disciplinary ticket by John Doe # 3, which John Doe # 3, Nunez, John Doe # 2, and LaConey all knew or should have known was false and not based upon sufficient evidence; (3) denial of due process and equal protection because the misbehavior report was not signed under penalty of perjury, and at the disciplinary hearing witnesses were not required to testify under penalty of perjury; (4) denial of due process and equal protection because Plaintiff's common law wife was intimidated into

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

implicating him for her marijuana possession and was later harassed while testifying at Plaintiff's disciplinary hearing; (5) recording of Plaintiff's phone calls without a warrant; (6) failure by Defendants to conduct an adequate investigation into the charges against Plaintiff; (7) conspiracy by Defendants to bring false charges against Plaintiff by threatening her to either testify against Plaintiff or face her own criminal charges; (8) failure by LaConey to intervene to correct the wrongdoing of her employees; and (9) denial of Plaintiff's due process rights at his disciplinary hearing by Knapp. *Id.* at 4–5.

Judge McAvoy dismissed the following claims with prejudice: (1) claims against John Doe # 3, Nunez, John Doe # 2, and LaConey related to the alleged falsity of the unsworn misbehavior report, *id.* at 10; and (2) claim that the charges against Plaintiff were not adequately investigated. *Id.* at 17. The district court dismissed all of Plaintiff's remaining claims without prejudice and ordered that the action be dismissed unless Plaintiff filed an amended complaint within thirty days. *Id.* at 17, 20. Plaintiff thereafter filed his Amended Complaint naming Fischer, Knapp, Nunez, LaConey and John Doe # 2, John Doe # 3, and John Doe # 4 as defendants. (Dkt. No. 10.)

### III. ANALYSIS

**A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

**\*4** A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b) (6). Fed.R.Civ.P. 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accep-

ted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Furthermore,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

"[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (considering factual allegations in plaintiff's opposition papers) (internal quotations and citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

**\*5** Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

**B. Plaintiff's Official Capacity Claims For Money Damages Against Defendants**

Plaintiff has sued Defendants under § 1983 in both their individual and official capacities. (Dkt. No. 10.) Defendants seek dismissal of Plaintiff's official capacity claims for money damages against them on Eleventh Amendment grounds. (Dkt. No. 22–1 at 6–7.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006), and bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (an inmate

plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity). Therefore, the Court recommends that the Plaintiff's § 1983 claim for money damages brought against Defendants, including the nonmovant Doe Defendants, in their official capacities, be dismissed with prejudice on Eleventh Amendment grounds.[FN5]

> FN5. The District Court is empowered to dismiss the official capacity claims against the nonmovant Doe Defendants *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). *See, e.g., Savatxath v. City of Binghamton,* No. 3:12–CV–1492 (TJM/DEP), 2013 WL 603635, at \*3, 2013 U.S. Dist. LEXIS 21710, at \*7 (N.D.N.Y. Jan.24, 2013) (*sua sponte* dismissal on Eleventh Amendment grounds of claim for money damages against Doe defendants in their official capacities pursuant to 28 U.S.C.1915(e)(2)(B)).

**C. Defendants' Argument for Dismissal Under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)**

Defendants seek dismissal of Plaintiff's Amended Complaint under the "favorable termination" requirement set forth in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that a § 1983 action seeking money damages is not cognizable if a finding in favor of the plaintiff would necessarily invalidate a criminal conviction unless the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus ...." *Id.* at 487 (internal citations omitted). "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

**\*6** The rule announced in *Heck* applies whenever a prisoner challenges the fact or length of his conviction or sentence, including being deprived of "good time" credits in a prison disciplinary proceeding, where the deprivation impacts the duration his confinement. *See Edwards v. Balisok,* 520 U.S. 641, 646–648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). *Accord Phelan v. Hersh,* No. 9:10–CV–0011 (GLS)(RFT), 2010 WL 277064, at \*3, 2010 U.S. Dist. LEXIS 4252, at \*8 (N.D.N.Y. Jan. 20, 2010); *Goston v. Potter,* No. 9:08–CV–478 (FJS/GJD), 2009 WL 1161020, at \*4, 2009 U.S. Dist. LEXIS 36012, at \*10–11 (N.D.N.Y. April 27, 2009).

It is clear from Plaintiffs' Amended Complaint that he is seeking damages for the penalty of eighteen months in SHU (reduced to twelve months on appeal) imposed by Defendant Knapp after a guilty finding in Plaintiff's disciplinary hearing on the drug related misbehavior report. (Dkt. No. 10 at ¶ 17.) It is far less clear that the penalty imposed by Knapp included a loss of good time. The sole reference in Plaintiff's Amended Complaint to a loss of good time is in his First Cause of Action, where he alleges that the false unsworn misbehavior report, unsubstantiated by the evidence:

caused plaintiff to be subject to 18 months in SHU box. To be held naked for days for contraband search and feces examination, and subject to pain and anguish, emotional distress loss of parole considerations, good time, to defend his self against unjustified disciplinary proceeding.

(Dkt. No. 10 at 9.) Plaintiff has not attached documentation of the penalty imposed by Knapp to his Amended Complaint, nor has he submitted such documentation with his opposition to Defendants' motion. Therefore, I cannot determine whether Plaintiff actually lost good time, or the inclusion of

the reference to lost good time in his Amended Complaint is merely the result of the unfortunate borrowing of language from another *pro se* prisoner's pleading. Because Plaintiff has included a loss of good time allegation in his Amended Complaint, whether intended or not, he must show that the challenged determination of guilt in his disciplinary hearing has been reversed, declared invalid, or otherwise favorably terminated in order to pursue a claim for damages related to the duration of his confinement.[FN6] *Heck,* 512 U.S. at 487. He has not done so.

FN6. Plaintiff was released from prison after he commenced this lawsuit. In *Huang v. Johnson,* 251 F.3d 65, 74–75 (2d Cir.2001), the Second Circuit held that *Heck* did not bar a plaintiff's § 1983 suit where at the time the § 1983 action was commenced, the plaintiff was no longer in custody, thus rendering a habeas corpus remedy unavailable. The Court relied upon Justice Souter's concurrence, joined by three other Justices, in *Spencer v. Kemna,* 523 U.S. 1, 21, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), in which Justice Souter concluded that a former prisoner, no longer in custody and therefore no longer able to satisfy the favorable termination requirement, "may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." District courts in the Second Circuit have found *Huang* inapplicable in cases like this one where the § 1983 action was commenced while the plaintiff was still incarcerated. *See, e.g., Gastelu v. Breslin,* No. 03–CV–1339 JG 2005 WL 2271933, at \*4, 2005 U.S. Dist. LEXIS 20341, at \*13–14 (E.D.N.Y. Sept. 12, 2005) ("[Plaintiff] was still in prison when he initiated his § 1983 action. Because his challenge would necessarily im-

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

ply the invalidity of his confinement, he is precluded from bringing an action under § 1983. The fact that he was released while his § 1983 action was pending does not alter the result."); *Rolle v. Connell,* No. 9:05–CV–991 (NAM RFT), 2005 WL 3077474, at *2–3, 2005 U.S. Dist. LEXIS 29549, at *6–8 (N.D.N.Y. Nov.16, 2005) (following *Gastelu*); *Hamm v. Hatcher,* No. 05–CV–503 (KMK), 2009 WL 1322357, at *8, n. 6, 2009 U.S. Dist. LEXIS 43975, at *28–29, n. 6 (S.D.N.Y. May 5, 2009) (same).

In *Peralta v. Vasquez,* 467 F.3d 98, 104–05 (2d Cir.2006), the Second Circuit ruled that the favorable termination rule in *Heck* is not an absolute bar to a mixed sanctions claim challenging both the duration and conditions of confinement. The Court held in *Peralta* that "a prisoner subject to mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement." Id.* at 104. (emphasis in original). This action presents as a mixed sanctions lawsuit since Plaintiff is challenging both the conditions of his confinement in SHU and the duration of his confinement in his Amended Complaint.

**\*7** In mixed sanction actions, a *pro se* plaintiff should be given the option of waiving any challenge to conditions affecting the duration of his confinement so that he can proceed with his claims with respect to the conditions of his confinement. *See, e.g., Goston,* 2009 WL 1161020, at *4 (in a mixed sanction case the court found it "must present [the *Peralta* ] waiver option to Plaintiff and ascertain whether he is willing to waive, once and for all, all claims affecting the duration of his imprisonment in order to proceed with his claims affecting his conditions of confinement," and direct dismissal of the complaint without prejudice upon

failure to waive); *see also Phelan,* 2010 WL 277064, at *4 (allowing plaintiff thirty days within which to file a waiver of claims affecting the duration of his confinement and directing dismissal of his due process claim without prejudice upon failure to file the waiver).

I therefore recommend that the District Court allow Plaintiff an opportunity to waive all claims affecting the duration of his confinement, and that Plaintiff be advised that his failure to do so will result in dismissal of this action without prejudice.

**D. Plaintiff's Compensatory Damages Claim**

Plaintiff seeks compensatory damages in the amount of $10,000,000 for the mental anguish and emotional distress he suffered as a result of being placed naked in an SITU cell where he was forced to go to the bathroom in a pail and being sentenced to eighteen months in SITU. (Dkt. No. 10 at 9 and 11.) Defendants have moved for dismissal of Plaintiff's claim for mental anguish and emotional distress damages because he has not alleged any physical injury as required under the Prison Litigation Reform Act of 1997, 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined to jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In the absence of allegations of physical injury, Plaintiff's claim for emotional and mental distress is subject to dismissal without prejudice under § 1997e(e) insofar as he seeks compensatory damages. However, § 1997e(e) does not preclude a prisoner from recovering nominal or punitive damages or seeking declaratory and injunctive relief without alleging physical injury. *See Thompson v. Carter,* 284 F.3d 411, 416–18 (2d Cir.2012) ( § 1997e(e) does not prevent a prisoner from obtaining injunctive and declaratory relief or recovering nominal and punitive damages). Plaintiff's prayer for relief is limited to injunctive and declaratory relief and monetary damages. (Dkt. No. 10 at 11.) Plaintiff has not specifically requested punitive damages.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5230264 (N.D.N.Y.)
**(Cite as: 2013 WL 5230264 (N.D.N.Y.))**

At the time Defendants filed their motion to dismiss on January 29, 2013, Plaintiff was still incarcerated. Plaintiff's release from incarceration renders his claims for injunctive and declaratory relief moot. *See Hallett v. New York State Dept. of Corr. Servs.,* 109 F.Supp.2d 190, 196 (S.D.N.Y.2000) ("Because [plaintiff] is no longer incarcerated and under the supervision of any of the named defendants, his requests for injunctive relief are dismissed as moot."); *Salahuddin v. Coughlin,* 591 F.Supp. 353, 362 (S.D.N.Y.1984) (claims for injunctive and declaratory relief are moot where plaintiff has been released on parole). However, because Plaintiff will be entitled to nominal damages if he ultimately prevails on his claim of emotional and mental distress, even if he is unable to establish physical injury, I recommend that Defendants' motion to dismiss under 42 U.S.C. § 1997e(e) be denied.

**\*8 ACCORDINGLY,** it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 22) be **GRANTED** in part and **DENIED** in part as follows:

(1) Defendants' motion to dismiss Plaintiff's Amended Complaint in its entirety under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) be **DENIED;**

(2) Defendants' motion to dismiss Plaintiff's claim for money damages against Defendants in their official capacities on Eleventh Amendment grounds be **GRANTED** as to all Defendants, including the nonmovant Doe Defendants; and

(3) Defendants' motion to dismiss Plaintiff's claim for emotional and mental distress be **DENIED;** and it is further

**RECOMMENDED** that Plaintiff be directed to advise the District Court in writing, within thirty days of the filing date of the Court's order, whether he waives for all times all claims in this action relating to disciplinary sanctions affecting the duration of his confinement in order to proceed with his claim challenging the sanctions affecting the conditions of his confinement; and that the Court specifically advise Plaintiff that the Court will deem his failure to file the required waiver statement within the required time to constitute his refusal to waive the claim, and that such failure will result in dismissal of this action without prejudice without further order of the Court; and it is further

**RECOMMENDED** that the Clerk be directed to return the file to the District Court for further review upon Plaintiff's full compliance with the Court's order, or, if at the expiration of thirty days Plaintiff has not complied with the terms of the Court's order; and it is hereby

**ORDERED,** that Defendants' request for a stay of discovery pending determination of their motion to dismiss is **DENIED;** and it is further

**ORDERED,** that the Clerk provide Plaintiff with copies of all of the unpublished decisions cited herein. FN*

FN* Editor's Note: Attachments of Westlaw case copies deleted for online display.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

N.D.N.Y.,2013.
Paulino v. Fischer
Slip Copy, 2013 WL 5230264 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2015 WL 5544316
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ramesh KHUDAN, Plaintiff,

v.

Superintendent William LEE, individually,
Corrections Officer Jeffrey Erns, individually,
Corrections Officer Duane Malark, individually,
Corrections Officer "John Doe 1", Lieutenant
Neal Greene, individually, Corrections Officers
Rory Hamilton, individually, David Deming,
individually, Arthur Andrews, individually,
Robert Sherman, individually, and "P." Allen,
individually, Nurse Sandy Fila, individually, and
Nurse Kathy Panuto, individually, Defendants.

No. 12–cv–8147 (RJS).
|
Signed Sept. 17, 2015.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff, a New York State Department of Corrections and Community Supervision ("DOCCS") inmate, brings this action under 42 U.S.C. § 1983 ("Section 1983"), alleging violations of his Eighth and Fourteenth Amendment rights while he was an inmate at Green Haven Correctional Facility ("Green Haven") in October 2009. Now before the Court is Defendants' motion to dismiss the action in its entirety pursuant to Rules 12(b) (1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is DENIED without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion.

I. BACKGROUND

A. Facts

Plaintiff was an inmate at Green Haven from August 2008 until his transfer to Sing Sing Correctional Facility

in February 2010. [1] (Compl.¶ 16.) According to Plaintiff, in October 2009, while he was held at Green Haven, Corrections Officers Jeffrey Erns, Duane Malark, and John Doe 1 falsely informed other inmates—including a leader of a gang within the correctional facility-that Plaintiff was a " 'sex offender' and/or 'rapist,' " when in fact Plaintiff had not been charged with or convicted of any sexual offense. (Id. ¶¶ 20, 26.) Plaintiff alleges that these three corrections officers intended the false rumors to result in an attack on Plaintiff, causing him "physical injury, serious physical injury and/or death at the hands of other inmates." (Id. ¶ 29.) In addition to falsely branding Plaintiff as a sex offender, these three corrections officers also harassed Plaintiff by, inter alia, refusing to permit Plaintiff to shower or clean himself during a period when Plaintiff experienced medical difficulties with his bladder. (Id. ¶¶ 30–31.) Moreover, Plaintiff alleges that all Defendants, not merely the three corrections officers, knew that Plaintiff had been falsely identified as a sex offender and/or rapist and that such offenders are targets for violent attacks at Green Haven. (Id. ¶¶ 35–36.)

Plaintiff further alleges that, on October 31, 2009, Superintendent William Lee, Lieutenant Neal Greene, Corrections Officers Rory Hamilton, David Deming, Arthur Andrews, Robert Sherman, and "P." Allen "intentionally refused to require ... inmates to pass through metal detectors prior to their entry to the [recreation] [y]ard." (Id. ¶ 57.) Plaintiff further asserts that, at approximately 6:00 p.m. that evening, none of the assigned prison officials-Lieutenant Greene and Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen-was located at his assigned security posts in the recreation yard. (Id. ¶¶ 62–63.) Instead, these officials remained inside the prison building, behind closed doors. (Id. ¶ 64.) Plaintiff alleges that, as a result of these prison officials' "deliberate indifference and intentional disregard" for Plaintiff's safety, an inmate entered the recreation yard with a metal weapon and stabbed Plaintiff in the right eye, causing Plaintiff "immediate excruciating pain, bleeding and visual impairment." (Id. ¶¶ 60, 65–68.)

**\*2** Additionally, Plaintiff alleges that Lieutenant Greene, Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen, and Nurses Sandy Fila and Kathy Panuto failed to provide Plaintiff with immediate medical attention. (Id. 88.) Furthermore, Plaintiff claims that Nurses Fila and Panuto-in an attempt to cover up the fact

that Plaintiff was attacked with a metal weapon-falsely identified the cause of Plaintiff's injury as a punch. (*Id.* ¶ 90.) Finally, Plaintiff alleges that Nurses Fila and Panuto, along with Lieutenant Greene, improperly kept Plaintiff in Green Haven's medical unit for hours before transferring him for treatment to Putnam Hospital Center. (*Id.* ¶¶ 96, 110.)

### B. Procedural History

On October 31, 2012, Plaintiff, then proceeding *pro se,* mailed to the Clerk of Court the initial Complaint in this action, which was originally assigned to the Honorable Loretta A. Preska. (Opp'n at 5–6.) This initial *pro se* Complaint included at least thirteen "Doe" Defendants. (Doc. No. 48, Ex. A at 2.) In April 2013, Chief Judge Preska ordered Plaintiff to file an Amended Complaint. (Doc. No. 7.) On October 7, 2013, Plaintiff, after retaining counsel, filed the First Amended Complaint. (Doc. No. 13.) On the same date, this action was reassigned to my docket. The First Amended Complaint included at least eight "Doe" Defendants, and provided a first and last name for only one of the other Defendants. (*Id.*) Following a conference on January 16, 2014, the Court permitted discovery for the limited purpose of identifying the "Doe" Defendants. On April 23, 2014, Plaintiff filed the operative pleading in this action, the Second Amended Complaint, asserting, pursuant to Section 1983, two distinct violations of his Eighth and Fourteenth Amendment rights. Specifically, Plaintiff alleges that, first, some of the Defendants "creat[ed] a dangerous environment for Plaintiff and fail[ed] to protect him from an attack," and, second, various Defendants "fail[ed] to provide immediate medical attention." (Compl.¶¶ 117, 119.) Consequently, Plaintiff is seeking monetary damages of at least $2,000,000. On October 17, 2014, Defendants filed their motion to dismiss, arguing that: (1) Plaintiff failed to exhaust his administrative remedies; (2) his claims are largely time-barred; (3) he fails to state a cause of action; and (4) Defendants are shielded from liability on qualified immunity grounds. (Doc. Nos.46–49.) The motion was fully submitted by December 5, 2014. (Doc. No. 54).

### II. LACK OF SUBJECT–MATTER JURISDICTION

Defendants first move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction, but none of their arguments actually pertains to the Court's subject-matter jurisdiction. Defendants perhaps view Rule 12(b)(1) as an appropriate vehicle to contend that: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's claims are barred by the statute of limitations; or (3) Defendants are shielded by qualified immunity. However, these three affirmative defenses are not jurisdictional-they are waivable-and are thus properly raised pursuant to Rule 12(b)(6), not 12(b)(1). *See, e.g., Zappulla v. Fischer,* No. 11–cv–6733 (JMF), 2013 WL 1387033, at *3 n. 3 (S.D.N.Y. Apr. 5, 2013) ("The exhaustion requirement, however, is not jurisdictional, but an affirmative defense that may be raised under Rule 12(b)(6) if, on the face of the complaint, it is clear plaintiff did not exhaust all remedies." (citing *Woodford v. Ngo,* 548 U.S. 81, 101 (2006); *Amador v. Andrews,* 655 F.3d 89, 102–03 (2d Cir.2011); *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003) (per curiam))); *United States v. Koh,* 968 F.Supp. 136, 137 (S.D.N.Y.1997) ("It is clear that the statute of limitations is a waivable affirmative defense." (citing *United States v. Walsh,* 700 F.2d 846, 855–56 (2d Cir.1983), *cert. denied,* 464 U.S. 825 (1983))); *Sorano v. Taggart,* 642 F.Supp.2d 45, 55 (S.D.N.Y.2009) (noting that "[q]ualified immunity is an affirmative defense" and "may be waived" (citing *Stephenson v. Doe,* 332 F.3d 68, 76 (2d Cir.2003); *McCardle v. Haddad,* 131 F .3d 43, 51 (2d Cir.1997))). Accordingly, the Court rejects Defendants' argument that it lacks subject-matter jurisdiction in this action.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

**\*3** Defendants next move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6). As noted above, the Court wi 11 consider Defendants' argument that Plaintiff failed to exhaust his administrative remedies pursuant to this Rule. Under the Prison Litigation Reform Act ("PLRA"), "exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action." *Messa v. Goord,* 652 F.3d 305, 309 (2d Cir.2011) (emphasis in original) (citation omitted); *see also Foreman v. Comm. Goord,* No. 02–cv–7089 (SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004) (noting that "the question of

exhaustion of administrative remedies *must* be addressed before the Court can consider the merits of plaintiff's claims" (emphasis added)). The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal iaw, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (emphasis added). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). It is well established that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007); *see also Woodford,* 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); *Zappulla,* 2013 WL 1387033, at *4 ("The PLRA exhaustion requirement is mandatory, and courts are not free to waive or ignore it."). Furthermore, "proper exhaustion" is required under the PLRA, meaning that a prisoner must "us[e] all steps that the agency holds out, and do[ ] so *properly* (so that the agency addresses the issues on the merits)." *Woodford,* 548 U.S. at 90 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002) (Easterbrook, J.) (emphasis in original)). As the Supreme Court has explained. "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Therefore, "[t]he exhaustion inquiry ... requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir.2009).

DOCCS's Inmate Grievance Program ("IGP") demands that prisoners complete three steps in order to exhaust their administrative remedies. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Espinal,* 558 F.3d at 125 (describing the IGP). First, the prisoner is obligated to file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a)-(b). Second, the prisoner must appeal an adverse decision by the IGRC to the superintendent of the facility. *Id.* § 701.5(c). Third, the prisoner is required to appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). *Id.* § 701.5(d). "Only after the CORC has denied an appeal may the inmate bring the matter into federal court." *Vann v. Fischer,* No. 11–cv–1958 (KPF), 2014 WL 4188077, at *22 (S.D.N.Y. Aug. 25, 2014) (citation and internal quotation marks omitted), *reconsideration denied,* No. 11–cv–1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015); *see also Gan'in v. Rivera,* No. 13–cv7054 (RJS), 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015).

**\*4** Since the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. However, a court may nonetheless dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement. *Id.* at 215–16 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.... [That administrative exhaustion need not be pleaded] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."). "In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted." *Garvin,* 2015 WL 876464, at *2 (citing *Williams v. Dep't of Corr.,* No. 11–cv–1515 (SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of the Complaint, it is clear that plaintiff did not exhaust such remedies.")).

Here, it is not clear from the face of the Second Amended Complaint that Plaintiff failed to exhaust the IGP's requirements. Indeed, in the Second Amended Complaint, Plaintiff explicitly insists that he "exhausted his administrative remedies...." (Compl.¶ 2.) Thus, the Court has little difficulty rejecting Defendants' non-exhaustion arguments at the motion to dismiss stage.

2015 WL 5544316

However, as part of the submissions filed in connection with this motion, Defendants have presented evidence outside the pleadings to support their claim that Plaintiff failed to exhaust the IGP's requirements, including a declaration from a DOCCS custodian of records asserting that Plaintiff did not exhaust any of the claims raised in this action. (*See* Doc. No. 42 ¶¶ 2–9.) Significantly, Plaintiff has not attempted to contradict this statement, nor has he asserted that he followed the IGP's mandatory second and third steps: appealing any adverse decision by the IGRC to the superintendent of the facility, N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c), and appealing any adverse decision by the superintendent to the CORC, *id.* § 701.5(d). (Doc, No. 54 at 3–4.)

Nevertheless, even assuming *arguendo* that Defendants are correct that Plaintiff failed to exhaust the administrative procedures, this conclusion would not end the analysis. Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused. This inquiry is generally guided by the three-part framework set forth by the Second Circuit in *Hemphill v. New York,* which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the affirmative defense of nonexhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." 380 F.3d 680, 686 (2d Cir.2004). [2]

 **\*5** Perhaps anticipating this *Hemphill* inquiry, Plaintiff asserts that, first, he received no response to his grievance and, second, that his cell was ransacked by unspecified corrections officers, resulting in the loss of mail. (Doc. No. 50, Ex. 1 ¶¶ 5–8.) However, neither of these factual assertions, without more, excuses the failure to exhaust. With respect to Plaintiff's first contention, courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g., Smith v. City of New York,* No. 12–cv3303 (CM), 2013 WL 5434144, at \*7 (S.D.N.Y. Sept. 26, 2013) ("It is well settled that an inmate must complete all requisite steps

of the IG[ ]P in order to fully exhaust his administrative remedies; even if he does not receive a response at a particular step in the proceedings, he must proceed in timely fashion to the next step." (citation omitted)); *Zappulla,* 2013 WL 1387033, at \*4 ("If prison officials fail to respond to a prisoner's grievance or initial appeal, that does not excuse a prisoner from pursuing the matter to the third step, as prisoners are free to appeal the failure to respond to the next higher authority." (citations omitted)); *Harrison v. Goord,* No. 07–cv–1806 (HB), 2009 WL 1605770. at \*4 (S.D.N.Y. June 9.2009) ("Prisoners are required to exhaust their administrative remedies even if they believe that administrative remedies would be ineffective or futile." (citations and internal quotation marks omitted)); *Leacock v. N.Y.C. Health Hosp. Corp.,* No. 03–cv–5440 (RMB)(GWG), 2005 WL 483363, at \*7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore,* No. 99–CV–0966 (LMM) (THK), 2002 WL 91607, at \*8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). With respect to Plaintiff's second contention-that his cell was ransacked-this too provides no excuse for Plaintiff's failure to exhaust his administrative remedies. As the Court has previously concluded in a similar case, the IGP "provides inmates with multiple avenues to file their grievances or appeals that do not depend upon access to outgoing mail," and, thus, conclusory allegations of mail tampering are not enough to excuse the failure to exhaust administrative remedies. *Bolton v. City of New York,* No. 13–cv–5749 (RJS), 2015 WL 1822008, at \*2 (S.D.N.Y. Apr. 20, 2015). Accordingly, there are no allegations in the current record that justify Plaintiff's failure to complete the administrative process.

Nevertheless, in light of the fact that failure to exhaust is an affirmative defense that, given the pleadings here, is properly reserved for a motion for summary judgment, the Court finds that the parties should have an opportunity to further develop the record with respect to whether Plaintiff in fact exhausted his administrative remedies and whether any non-exhaustion is excused as to each of the Defendants pursuant to the *Hemphill* factors. Thus, the Court will order limited, expedited discovery for this purpose. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as

a Rule 56 motion for summary judgment following limited, expedited discovery on the issue of administrative exhaustion. [3]

## IV. CONCLUSION

**\*6** IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is DENIED without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 46. Accordingly, IT IS FURTHER ORDERED THAT by October 8, 2015, the parties shall complete limited, expedited discovery on the narrow issue of whether Plaintiff exhausted his administrative remedies and, if not, whether his non-exhaustion is excused as to each of the Defendants. IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment on the issue of administrative exhaustion no later than October 29, 2015; Plaintiff shall file his opposition, if any, no later than November 19, 2015; and Defendants shall file their reply, if any, no later than November 30, 2015. The parties shall submit statements of material fact pursuant to Local Civil Rule 56.1 ("56.1 statements") in connection with Defendants' motion. In light of the foregoing, and the fact that- if the administrative exhaustion issue is not dispositive of this action-Defendants may renew their motion to dismiss on the other grounds raised in their brief, IT IS FURTHER ORDERED THAT Defendants' deadline to answer or otherwise respond to the Second Amended Complaint is ADJOURNED until after the Court has resolved Defendants' summary judgment motion or, if Defendants decline to file a summary judgment motion, to October 29, 2015.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5544316

Footnotes

1    All facts are drawn from the Second Amended Complaint (Doc. No. 32 ("Compl.")) and are assumed to be true for purposes of this motion. In deciding this motion, the Court has also considered Defendants' Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 47 ("Mem.")), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. No. 51 ("Opp'n")), Defendants' Reply Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 54 ("Reply")), and all accompanying declarations (Doc. Nos.48–50).

2    Following the Supreme Court's decision in *Woodford,* 548 U.S. at 90–91. which held that the PLRA requires "proper exhaustion" of administrative remedies in "compliance with an agency's deadlines and other critical procedural rules," the Second Circuit has noted, without holding, that the second and third prongs of the *Hemphill* analysis-estoppel and special circumstances-may no longer be applicable. *See Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011) ("We have questioned whether, in light of *Woodford,* the doctrines of estoppel and special circumstances survived." (citing cases)). Nevertheless, the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, *see* 655 F.3d at 102–04, and district court in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador, see, e.g., McClinton v. Connolly,* No. 13–cv–2375 (KMW) (DCF), 2014 WL 5020593, at \*2 n. 4 (S.D.N.Y. Oct. 8, 2014) ("Until the Second Circuit instructs otherwise, the Court will continue to consider the three *Hemphill* exhaustion exceptions."); *Powell v. Corr. Med. Care, Inc.,* No. 13–cv–6842 (WHP), 2014 WL 4229980, at \*2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); *Stevens v. City of New York,* No. 12–cv–1918 (JPO)(JLC), 2012 WL 4948051, at \*6 (S.D.N.Y. Oct. 11, 2012).

3    Because the administrative exhaustion issue may be dispositive of this action, the Court does not address the other grounds for dismissal discussed in Defendants' motion to dismiss. Instead, in the event that Defendants decline to file a summary judgment motion on the exhaustion issue, they may renew their motion to dismiss on those other grounds at the conclusion of the limited discovery period. In the event that Defendants do file a summary judgment motion, they may renew their motion to dismiss if the Court does not grant summary judgment on non-exhaustion grounds.

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.